(25 Misc. Rep. 66.)

### BELL & BOGART SOAP CO. v. PETROLIA MFG. CO. et al.

(Supreme Court, Special Term, New York County.   October, 1898.)

1. INJUNCTION—SECRET TRADE PROCESS.

G. agreed to build a factory for plaintiffs for the manufacture of a particular soap, to impart knowledge of the process and formulæ of making it, and not to sell any similar plants or engage in the manufacture for 20 years.   The soap was a well-known proprietary article, and its process of manufacture was known to several manufacturers.   G.'s process was simply a more skillful combination and mixing of selected materials under certain temperatures than other manufacturers applied to the same materials.   *Held* not to be a secret trade process, within the protection of an injunction.

2. SAME—EVIDENCE—MATERIALITY.

G. afterwards sold a plant for the manufacture of a different soap, which plant was diverted to the manufacture of this particular soap; both plants being equally suitable for that purpose.   *Held*, in the absence of fraud, the owner of the first plant could not enjoin the use of the latter one for the manufacture of the soap in question, as an infraction of an exclusive trade right.

3. SAME—FRAUD—EVIDENCE.

G. had built a soap-making plant under an agreement to impart the process of manufacture, and not to build any other plants for, or engage in the manufacture of, the same kind of soap.   The construction of such plant did not differ substantially from other good plants.   The process of making a soap substantially similar was well known.   The builder sold another plant for the manufacture of a different kind of soap, and it was later employed to make the kind in question.   He recommended as an operator, to the owners of the latter plant, one P., who, though G. did not know it, had learned the process from P.'s brother, who was in G.'s employ.   P. imparted his knowledge of the manufacture, which was not precisely the same as G.'s, to the owners of the latter plant.   *Held* not to show a fraudulent scheme on the part of the owners of the latter plant with G. and P. in acquiring and operating the plant and process.

Action by the Bell & Bogart Soap Company against the Petrolia Manufacturing Company and others.   Judgment for all defendants except Grant.

Francis M. Eppley (Henry Schmitt, of counsel), for plaintiff.

Manierre & Manierre, for defendants Petrolia Mfg. Co., James R. Pitcher, and Aubrey H. Martin.

Howard E. White, for defendant Henry B. Pratt.

William A. Jenner, for all defendants.

FREEDMAN, J.   The principal object of the action is to restrain the Petrolia Manufacturing Company and its assignors, Pitcher & Martin, from using its plant (which had been obtained from the defendant Grant) in making a white Cochin cocoanut oil soap, known as "Coal Oil Johnny Soap," and to restrain Pratt from making or assisting in making said soap on said plant, etc.   The complaint is based on a contract between Grant and Bell & Bogart, the plaintiff's assignors, dated July 20, 1895, whereby Grant, for a certain consideration to be paid, agreed to erect for Bell & Bogart a soap plant with a capacity of 200 boxes of white Cochin cocoanut oil soap per day, "the same kind of soap now being supplied Maross Jenkins, and known as 'Coal Oil Johnny Soap,'" and whereby Grant further

agreed to file and surrender his rights and claims in the process and formulæ and making of said soap, and that he would not sell any plants in the United States for the manufacture of white Cochin cocoanut oil soap, or engage in the manufacture of said soap, during the term of 20 years. The complaint then proceeds and charges that thereafter, on February 11, 1896, Grant entered into contract with Pitcher & Martin for the erection of a soap plant in all respects similar to the plant he had sold to Bell & Bogart, which was ostensibly designed for the manufacture of green soaps, but was intended to be used, and subsequently actually was used, by the defendant corporation for the manufacture of a white Cochin cocoanut oil soap, under the name of "Coal Oil Johnny," which was in all respects similar to the soap made by the plaintiff. This is charged to have been done by the defendants unlawfully, fraudulently, and without the consent of the plaintiff, and pursuant to a fraudulent scheme entered into between them. Pratt is further charged with having acquired his knowledge of making said soap in such a confidential capacity that a court of equity will restrain him from using it to the prejudice of the plaintiff. The defendant Grant failed to answer, but the other defendants appeared, and by their answers put in issue all the material allegations of the complaint.

The trial was a protracted one, and the evidence is very voluminous. After careful consideration of all matters submitted, I cannot find that the plaintiff has substantiated its alleged cause of action against the answering defendants. Coal Oil Johnny Soap was an article well known in the market. Jenkins controlled its sale. He held the trade-mark and proprietary right. Anybody could manufacture said soap for Jenkins, provided he knew how to do it, and several manufacturers did know it. Jenkins was at liberty to order the soap from different manufacturers, provided he was willing to run the risk of receiving soap which might not be of a uniform quality. Grant knew how to manufacture a Coal Oil Johnny Soap which was highly satisfactory to Jenkins. His principal business seems to have been to erect soap plants or factories for other parties, and in doing so he tried to turn his knowledge of the wants of Jenkins to a profitable account. Upon plaintiff's own showing, Grant's method of making Coal Oil Johnny Soap consisted solely and exclusively in the selection, combination, and mixture of well-known and generally used substances in certain proportions and under certain temperatures, in their agitation for a certain length of time by well-known appliances, and in the end allowing the product to cool slowly in certain frames, which were also well known. But upon plaintiff's own showing there was no definite, invariable rule observed as to any of the particulars involved; and it appeared that the particulars were varied, and had to be varied, as called for by different varying circumstances, which could not always be controlled, and that the variations were made within certain limits well known to every experienced soapmaker. In fact, Grant's method consisted in the exercise of great care in the selection of well-known materials previously in use in the trade, and their combination and mixture in certain proportions, also approximately observed by other manu-

facturers, by means of appliances also more or less known to others. His ideas in these respects he undoubtedly undertook to sell to Bell & Bogart, plaintiff's assignors, in connection with the plant he erected for them; and Bell & Bogart, who had no prior practical experience, may have been led to believe, and may have believed, that his method of making the soap was founded upon a valuable, secret process.    But, upon the facts disclosed, there was, within the rules of law applicable to such a case, no secret process whatever involved.

As regards the plant, Grant's contract with Bell & Bogart was that he would not sell any plants in the United States for the manufacture of white Cochin cocoanut oil soap.    This, on its face, did not preclude Grant from selling or putting up any other kind of a soap plant to or for anybody else.    Bell & Bogart may have been led by Grant to believe that, for the purpose of manufacturing white Cochin cocoanut oil soap exclusively, there was some peculiarity about their plant by which it became specially adapted for that purpose; but the evidence shows that there was no such peculiarity, that their plant can be readily used for the manufacture of any other kind of soap by the so-called "cold process," and that any other good soap plant erected by any other manufacturer of such plants for the manufacture of soap in general by the same process can be readily utilized for the manufacture of white Cochin cocoanut oil soap.    The written contract between Grant and Pitcher & Martin contained nothing in derogation of the rights of Bell & Bogart, and the plant sold by Grant to Pitcher & Martin and put up for them was in fact a plant for the manufacture of soap in general, about which there was nothing novel.    The mere fact, therefore, that such plant was subsequently diverted to the manufacture of Coal Oil Johnny Soap, is, standing alone, immaterial.    It could only become material if it were shown that the defendants did it with knowledge of the rights sold by Grant to Bell & Bogart, and pursuant to a fraudulent scheme entered into between them and Grant for that purpose.    The evidence wholly fails to establish such knowledge and fraudulent scheme.    Fraud is never presumed, but must be proved.    Mere conjecture or surmise is not enough.    True, it may be established by circumstantial evidence, but such evidence must be convincing.    The evidence in this case is not of that character.    There is no evidence that Grant ever communicated to Pitcher & Martin or to Pratt the particulars of his method of making Coal Oil Johnny Soap.    On the contrary, the evidence is the other way.    True, Pratt acquired some knowledge of it, but not surreptitiously, as is claimed in the complaint, but in a perfectly lawful way, namely, by instruction from his brother, who was in Grant's employ.    He was under no promise or obligation not to use or reveal his knowledge.    Nor have sufficient facts been shown upon which it can be held that he was under an implied contractual obligation to Bell & Bogart not to use or reveal his knowledge to their prejudice.    Grant did not even know that Pratt had any knowledge of the precise particulars observed by Grant in the manufacture of Coal Oil Johnny Soap.    The mere fact, therefore, that Grant, under the circumstances already

referred to, and pursuant to his contract obligation to furnish an operator to Pitcher & Martin, recommended Pratt to them, and thus secured his employment, proves no essential element in plaintiff's cause of action. Moreover, Pratt never gave to Pitcher & Martin or their successors any precise formula or definition of the method pursued by him in the making of the Coal Oil Johnny Soap which he did make for them. Nor is there competent proof that his method conformed precisely to the method communicated by Grant to Bell & Bogart. On the other hand, the proof fully shows that the method of manufacturing a soap in all respects similar to the Coal Oil Johnny Soap was well known to the trade.

The remedy of the plaintiff is against Grant. As against all the other defendants, no cause of action has been established; and they are entitled to a dismissal of the complaint, as against themselves, upon the merits, with costs. Each defendant appearing by separate attorney should have a bill of costs. The case is also one for an allowance, if a proper basis is presented for its computation; but upon this point the application should be renewed upon affidavits in connection with the pleadings and the proceedings and the testimony given upon the trial. Ordered accordingly.