## INBODEN v HAWKER, INC., etc. et

Ohio Appeals, 2nd Dist, Franklin Co

No 3378. Decided Nov 15, 1941

Guy R. Martin, Columbus, for plaintiff-appellee.

B. F. Levinson, Columbus; Owen B. Sherwood, Columbus, for defendants-appellants.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of L. W. Hawker's appeal on questions of law and fact from the judgment of the Court of Common Pleas of Franklin County. Ohio.

The case is in our court for hearing de novo. By acquiescence of the parties the cause is submitted upon the same evidence upon which it was tried in the Common Pleas Court and none other.

Plaintiff in his petition sought an injunction against L. W. Hawker and Harry H. Banta from listing in the Columbus Telephone Directory of the name "Columbus Dictating Machine Company", and that the defendant telephone company be restrained from publishing said name under the telephone number of the defendant L. W. Hawker or Harry H. Banta; and, further, that the defendants, L. W. Hawker and Harry H. Banta, be restrained from using said name.

It appears from the pleadings and the uncontradicted evidence that the plaintiff, Warren E. Inboden, for about fourteen years prior to February 5, 1941, had been in the employ of L. W. Hawker, operating under various trade names, but principally under the name of "Dictaphone Sales Company". The defendant, Mr. Hawker, had operated this business as an individual in Columbus for about twenty-three years and always under some trade name. The plaintiff, Inboden, had occupied various positions with the Dictaphone Company, starting in that work through which he would learn the business, advancing to the position of service man in the field and later salesman of used and new machines, and afterwards general manager, but limited in that Mr. Hawker had the final say when questions would arise.

During the year 1939, the plaintiff, Inboden, was debating in his mind a severance of his connection with the Dictaphone Company, and by the middle of the year he had definitely determined so to do and go into the same business as a competitor to Mr. Hawker. He did not advise Mr. Hawker of his intentions until February 11, 1940, when he, by letter, tendered his resignation, effective February 15, 1940.

On January 26, 1940, the plaintiff, Inboden, made application to the Secretary of State and received a registration of the trade name "The Columbus Dictating Machine Company". This application and registration were under the provisions of §6240-11-12-13 GC. The certificate issued to him was No. RN-781.

The plaintiff operated under this name of Columbus Dictating Machine Company before severing his connection with the defendant, Hawker. His operation consisted of buying used machines and reselling them, and in at least one instance taking a service contract in his own name. Some time in the fall of 1939 he had letterheads, billheads and service blanks printed under the business name of Columbus Dictating Machine Company. Immediately following Mr. Inboden's resignation and severance of his connection with Mr. Hawker, the latter employed the defendant, Harry H. Banta, to take on the work that Mr. Inboden had been doing. Mr. Banta came to Columbus and located living quarters in an apartment. This was the same apartment previously occupied by Mr. Hawker as his living quarters when in Columbus. Mr. Hawker had a similar business in Dayton, and was not in Columbus all the time. The evidence indicates that after Mr. Banta's employment he and Mr. Hawker occupied the apartment jointly.

On or about March 5, 1940, the defendant, Mr. Banta, acting for his employer, Mr. Hawker, made an applica-

tion to the defendant Telephone Company for a listing in their telephone directory of the name "Columbus Dictating Machine Company", the address and 'phone number being the same as that previously used in the apartment. This was a different address and a different 'phone number than that where the general business of the Dictaphone Sales Company was transacted. Both Mr. Banta and Mr. Hawker denied having any knowledge that the plaintiff, Inboden, had engaged in business as a competitor under the name of "Columbus Dictating Machine Company".

At or about this same time Banta gave instructions to the post office to deliver all mail for the Columbus Dictating Machine Company to his apartment address. Through this mix-up in the delivery of mail the plaintiff learned that the defendants, Hawker and Banta, either or both, were using the name "Columbus Dictating Machine Company".

Plaintiff filed his action for injunction on November 4, 1940.

Following the filing of the petition of plaintiff and after notice and hearing the plaintiff was granted a temporary injunction.

On November 26th the defendants, Hawker and Banta, filed a joint answer and cross-petition.

On December 7th the defendant Telephone Company filed an answer, which contained a recital of the fact that both plaintiff and defendant had applied for listing in their directory, neither of which had been published at the time of bringing the action due to the fact that their 1940 directory was not published until late in the fall, and before time of publication action was pending. In the answer they asked the direction of the court as to what action they should take.

The joint answer of the two defendants was a general denial. The cross-petition contained, among others, the averment that the defendant, L. W. Hawker, to the knowledge of plaintiff had for a long time before February, 1940, used the trade name "Columbus Dictating Machine Company"; further,

that Inboden while an employe, in registering the name with the Secretary of State was the agent of the said Hawker, and thereby such registration was as a matter of law made on behalf of the defendant and that the registration certificate was the property of the defendant. Further, that Inboden, as an agent and representative of Hawker, during his period of employment was given and entrusted with all of the trade secrets, names of customers, number of machines that had been sold and where in use for the general public in the trade territory covered by defendant Hawker as a representative of the Dictaphone Sales Company; that Inboden thereby obtained valuable information and represented the defendant Hawker in a fiduciary capacity; that plaintiff had charge of all the records and information of the business belonging to the defendant Hawker; that the business he was conducting as a competitor was the same as he had formerly transacted as the representative of Hawker; that Inboden was a full time employe and that he had been paid in full for his services. He further avers that plaintiff in violation of his trust and in derogation of his duty, converted to his own use the names and addresses of all the customers of said defendant; and that during the period of his employment plaintiff induced a large number of customers to cancel their contracts with the defendant Hawker and to employ the plaintiff individually after he would terminate his connection with the said defendant; that during said period of his employment and in violation of his trust, the plaintiff, Inboden, purchased on his own behalf a large number of dictating machines and equipment from various customers of the defendant Hawker, sold the same and has failed and neglected and refused to turn over to the defendant Hawker all of the profits derived therefrom and has made no accounting therefor; that plaintiff has converted to his own use practically all of the forms and literature used by the defendant Hawker in promotion of his business and has appropriated the same for his own use; that

he has taken with him records and information as to the location of the dictating machines sold by Hawker, so as to contact said persons for the purpose of obtaining service contracts or for the purpose of selling dictating machines and equipment for his own benefit; that defendant's application for listing in the telephone directory of the name "Columbus Dictating Machine Company", was made prior to the time that the plaintiff, Inboden, made his application. The cross-petition contains other averments of. the same general character and enlarging upon the claimed obligations of Inboden arising under his employment. The prayer asks that plaintiff, Inboden, be declared to be a trustee of and for the defendant L. W. Hawker; that he be required to account for and turn over to the defendant Hawker all of the records, information, trade secrets, price lists, and the profits derived from the business converted to the use of said plaintiff belonging to the defendant; that plaintiff be enjoined from engaging the business of servicing, buying or selling dictating machines in the City of Columbus; that he be enjoined from the use of the name "Columbus Dictating Machine Company"; from soliciting the customers of the defendant Hawker, etc.

At the close of the testimony, upon application of counsel for the defendant Hawker, he was granted leave to amend his cross-petition. This was done, not by interlineation but by rewriting. The amended cross-petition was re-signed by counsel and the defendant Hawker, and the date of verification was the same as in the original. From statements made by counsel in their request to amend, we are able to learn that the following is the amendment:

"That the condition of said employment was that the said Warren E. Inboden and the defendant, L. W. Hawker, orally agreed that in the. event said employment was terminated, said plaintiff, Warren E. Inboden, would not enter into any similar or competing business, either as owner, agent, or employe, either directly or indirectly, in the City of Columbus, Ohio, or in the. territory adjacent thereto and covered by the business of said defendant, L. W. Hawker, within a period of one year after the termination of said employment."

The evidence comprises some 242 pages of typewritten matter, together with a great number of exhibits.

The trial court found for the plaintiff and granted an injunction restraining the defendant from using the name "Columbus Dictating Machine Company", and overruled defendant's application for a similar order. This injunctive order was also to apply to the defendant Telephone Company.

On defendant Hawker's cross-petition the court granted a judgment in favor of the defendant Hawker in the sum of $128.50, which the court found to be profits on machines bought and sold by the plaintiff during the time he was in the employ of the defendant Hawker.

During the progress of the trial the defendant Banta was dismissed by agreement of the parties, on the ground that the undisputed evidence disclosed that any action that he had taken had been as the representative and agent and with the consent of the defendant Hawker.

Counsel for the respective parties have filed very voluminous and instructive briefs. However, we do have an opportunity and avail ourselves of it by calling attention to that part of Rule VII which makes recommendation as to form and style of briefs. Counsel in their briefs do file indexes, but they are of no value to us. The citations of authorities are listed in alphabetical form, for what reason we are unable to understand.

We take it that counsel desire to prepare their briefs in the form that will be most helpful. We have endeavored to point out the form in our rules.

From a careful examination of the record, including the exhibits, we arrive at the conclusion that the plaintiff, Inboden, was the first to use the

name "Columbus Dictating Machine Company"; that he had used it continuously from February 15, 1940, up to the time of trial. We also find that he used the name prior to the time of his severance of his employment with the defendant Hawker. Of course, he was doing business as an individual, and the name "Columbus Dictating Machine Company" was only a trade name. We very positively determine that he did not have the right to enter into competition with the defendant Hawker during the time of his employment. His explanation is that he at all times made an honest, consistent effort to buy for his employer, Hawker, and to sell for his employer before he made any purchases or sales on his own account. He further states that the defendant Hawker limited him in the price that he might pay for used machines and when he could not buy at the price stipulated, he purchased at a higher price on his own account. Likewise, he stated that when he could not sell machines at the price fixed by the defendant Hawker, he then sold his own repaired machines at a price acceptable to the customer. This manner of dealing can not be sanctioned, however honest and conscientious the plaintiff might have thought he was with his employer. Plaintiff was employed on a full time basis, and he would have no right without the knowledge or sanction of his employer to engage in a competitive business. The fact that he worked in reconditioning after working hours would not alter the situation.

An employe in the character of work in which the plaintiff was engaged would never get very far if he habitually watched the clock as to the hours of active service. Every salesman in his after hours, even outside those of active duty, must be thinking and formulating his plans for the morrow. It is a very serious question if plaintiff adds anything to his case by the fact that he had the name registered with the Secretary of State on January 26, 1940. This date was prior to the time

that he had severed his relations with the defendant Hawker.

The first section of the Registration Act authorizes the registration of a title or designation under which the business is being operated. While it is true that he was operating prior to February 15, 1940, yet as heretofore stated his operation was illegal, and we doubt very much if such illegal operation could be the basis for registration under §6240-11 GC.

Notwithstanding the illegality of his operations prior to February 15, 1940, it does not mean that he could not legally so operate after the severance of his employment. In other words, the law does not decree that because he was operating illegally before February 15, 1940, that thereby he can not operate at all. We think the law is well defined that an employe after severing his connection with an employer may enter into competition with the employer, either on his own account or as an employe of some other competitor, unless under a contract with the first employer he has agreed not so to do. Of course, these contracts are in restraint of trade and must be limited as to time and place.

We are unable to find any credible evidence that the defendant actually used the name "Columbus Dictating Machine Company" prior to February 15, 1940. The most that defendant or any of his witnesses say is that the name was discussed before, and this testimony even goes to the point that it was discussed in the presence of plaintiff. Plaintiff denies this. A mere discussion would not constitute use. We gather from the record that defendant's first use was some time in early March of 1940.

Defendant makes the further claim that there was a contract with plaintiff that in the event he left the employment that he was not to engage, directly or indirectly, in a competing business within the Columbus territory for a period of one year. At this time we might say that we are confronted with a legal question not discussed in the briefs, as follows: Since the year

has expired before the case reached our court, what relief, if any, of an injunctive character can be given to defendant?

From an examination of the transcript of docket and journal entries, we learn that the year had expired before the case was finally decided and journalized in the Common Pleas Court. It is probably true that if the one year provision was contained in the contract between the plaintiff and the defendant and thereby defendant's acts determined to be unauthorized under the law up to and including February 15, 1941, that such a situation might prevent injunctive relief to the plaintiff in the use of the name.

No claim is made that there was any contract in writing. Defendant in his testimony is very indefinite as to the time and place when he contracted with plaintiff that he would not enter into a competitive business for a period of one year after their relations were severed. He persists in explaining business policies within the understanding of everybody, but, after continued effort on the part of counsel, fails to give satisfactory evidence of a definite contract. The fact that this situation was not pleaded in defendant's original cross-petition but was inserted by amendment presents a very substantial query. Plaintiff testifies very positively that no such contract was entered into. Two witnesses, or possibly three, called by defendant from company employees, offer testimony that at various times the plaintiff discussed with them the terms of his contract and therein stated that he had contracted not to enter into business for one year after the termination of his contract with the defendant Hawker. Just as Mr. Hawker's testimony was very weak, the testimony of his supporting witnesses is too strong to have any probative force. According to the testimony of these, and particularly one, these statements of plaintiff Inboden were almost of daily occurrence. They were unable to give much detail as to the circumstances under which the conversations took place. and while very vague in most details, they were able to say

positively that plaintiff Inboden had stated to them that he was under contract not to go into business for a period of one year after the severance of his relations.

We have read the opinion of the trial court and find that he arrived at the same conclusion. Of course, we understand that the case is before us de novo, and this means that we are to hear and determine it as though it had originated in our court, uninfluenced by the findings of the trial court. However, it is gratifying when we find that our determination conforms to that of the trial court.

We are unable to find that plaintiff took from defendant any of his trade secrets or any of his property as claimed in the cross-petition. Trade secrets may not be construed as knowledge and efficiency which plaintiff obtained or procured through his fourteen years' experience. **The National Tube Company v Eastern Tube Company, 23 C. C. N. S. 459:**

"A trade secret is a plan or process, tool, mechanism or compound, known only to its owner or such employees as it is necessary to confide in, in order to apply it to the uses for which it is intended."

The law in Ohio, as well as in other jurisdictions, is well defined that in the absence of an express contract not to engage in a competitive pursuit, an employee when taking new employment in a competitive business, may solicit for his employer the trade or business of his former customers and will not be enjoined from so doing. **Curry v Marquart et, 133 Oh St 77.**

On the question of injunctive relief we find in favor of plaintiff on his petition, and against defendant on his cross-petition.

This brings us to the consideration and determination of the remaining question, and that is as to what, if any, charges should be made against the plantiff in the nature of an ac-

counting by reason of his operations of a competitive nature during the time that he was still in the employ of the defendant, Hawker.

With one possible exception all of this testimony is presented through the cross-examination of the plaintiff, Inboden. According to his statement, between the dates of June and September, he purchased fifteen old machines. Defendant presents no testimony that the value of these machines was in excess of what was paid by the plaintiff. Plaintiff in his cross-examination testifies that at least four of these machines were sold by him before February 15; that one or two were junked and the parts used for repairing other machines. We are not advised as to the dates and price at which other machines were sold after February 15, 1940. Plaintiff gives estimate of the labor and material added to these four or five machines before they were sold. No satisfactory evidence is given as to what part was labor and what part material.

Having been reconditioned and sold before February 15, 1940, we do not think that plaintiff should be given any credit for labor, even though he did do the work of reconditioning after hours. Plaintiff was being paid on a full time basis for services of this character. While working after hours on his own project of a competitive character he was taking out of himself energy and effort which should be devoted to his employer's business. We are sorry that we can not separate the labor from the material, but this was an obligation of the plaintiff. We hold that the profit shown by the sale price over and above the purchase price should be charged against the plaintiff. As we calculate, this amount totals $245.00. To that amount should be added $40.00, which we find to be the value of the service contract obtained by plaintiff from one of defendant Hawker's customers before the expiration of plaintiff's time of service, making a total of $285.00, for which judgment will be entered in favor of the cross-petitioner, Hawker, against the plaintiff, Inboden.

We find against defendant on his other claims.

Costs in this court will be adjudged against the plaintiff. Costs in the lower court will remain as per entry therein.

Entry may be drawn in accordance with this opinion.

GEIGER, PJ. and HORNBECK, J., concur.

## APPLICATION TO DETERMINE PAYMENT OF COSTS

No 3378. Decided Jan 6, 1942

BY THE COURT:

The above-entitled cause is now being determined on an application of counsel for both parties to determine as to which party should pay the costs of the transcript of testimony taken before the trial court and upon which the case was tried in our Court.

In our opinion we modified the judgment of the trial Court and ordered that the costs made in the lower court be paid according to the judgment of that Court, and the costs in our Court should be paid by the appellee.

The appeal was on questions of law and fact, and thereby it came to our Court for hearing de novo.

It is claimed that counsel for defendant Hawker, appellant, following the notice of appeal secured a transcript of the testimony taken before the trial Court prepared in the form of a bill of exceptions.

At the time no agreement had been obtained that the transcribed testimony would be accepted as the evidence presented to us. At a later date, however, counsel for appellee agreed that the transcribed testimony would be accepted as the evidence in our Court. The difficulty arises by reason of the fact that counsel for appellant ordered the transcript of the testimony without first having secured the agreement of the appellee or his counsel that the transcribed testimony should be the evidence before us.

We find that attorneys very generally have difficulty in taking the prop-

310

er, orderly steps in presenting the evidence before us. If counsel would have in mind the statutory proceedings for trial de novo, the difficulty would be removed. A trial de novo means that the case is tried in the reviewing court the same as if there had not been a previous trial. Owing to the stress of business, we do not hear the testimony in de novo cases, but avail ourselves of the statutory right to appoint a Master Commissioner before whom the testimony would be taken and then referred to us. Anything beyond this must be by agreement. We may not by rule or order require the evidence to be submitted in any other manner. However, in the interest of saving expense, we do encourage counsel to agree upon some acceptable method of presenting the testimony:

We point out that possibly counsel,

1. May submit an agreed statement of facts.

2. That it may be acceptable to try the case on a transcript of the evidence in the Court below.

3. That the evidence may be taken before a court reporter, just as depositions are taken.

4. Any other plan that is acceptable to counsel.

It will be seen that these suggested plans save the expense of a Master Commissioner. It is obvious that when a Master Commissioner is appointed it is also necessary to have a stenographer to take and transcribe the testimony. Appellants, on chancery appeals, should always keep in mind that in the absence of an agreement, no steps should be taken towards the submission of testimony except in open Court or on order of the Court. Of course, this would not apply to the taking of depositions, where a situation exists permitting the taking of depositions.

Counsel for appellee calls attention to the fact that he was entitled to a hearing de novo, and in this contention he is correct. Of course, if no agreement was made as to the presentation of evidence, we would have ordered the appointment of a Master Commissioner. The fact remains that counsel for appellee did agree that the transcribed evidence taken before the trial Court should be the evidence presented to us.

We think counsel is in error in stating that the expense would have been less had he not made the agreement.

If counsel had in mind any further testimony not presented in the trial Court, he could have very properly stipulated that he would only agree to the transcribed evidence being used if he might supplement same through the taking of additional testimony.

We are unable to conclude that §§1550, 1551 and 1552 GC, are controlling under the present situation.

Much can be and has been said on both sides relative to the merits of their contentions.

It is our opinion that justice demands that the costs of the transcript of the testimony be divided 50-50, that is one-half paid by appellant and the other half paid by the appellee. Final entry may be so drawn:

BARNES & HORNBECK, JJ., concur.
GEIGER, PJ., not participating.