ELVIN E. RIDLEY,

*Plaintiff and Appellant,*

vs.

FRANK KROUT,

*Defendant and Respondent.*

(No. 2355; May 2nd, 1947; 180 Pac. (2d) 124)

254

For the Plaintiff and Appellant, the cause was submitted upon the brief and also oral argument of E. E. Birchby of Sheridan, Wyoming.

For the Defendant and Respondent, the cause was submitted upon the brief of H. Glenn Kinsley and James Munro, both of Sheridan, Wyoming.

258

## OPINION

BLUME, Justice.

This is an action for an injunction by the plaintiff against the defendant. The injunction was denied and plaintiff has appealed to this court.

The plaintiff is the owner and conducts the so-called Ridley's Repair Shop. He and his father had conducted that repair shop for a period of forty years prior to 1939. Repairs of various mechanical devices are made in the shop. Defendant Krout was a mechanic, particularly in repairing automobiles and bicycles. He entered into the employ of the plaintiff about January, 1939, and on July 10, 1939, plaintiff required defendant to enter into a written contract with him as follows:

"CONTRACT OF EMPLOYMENT WITH CERTAIN COVENANTS.

AGREEMENT MADE BETWEEN MR. ELVIN E. RIDLEY, OF SHERIDAN, WYOMING, HEREINAFTER CALLED THE "EMPLOYER", AND MR. FRANK KROUT, OF SHERIDAN, WYOMING, HEREINAFTER CALLED THE "EMPLOYEE".

THE EMPLOYER HEREBY AGREES TO DO THE FOLLOWING:

1. Teach the Employee the keymaking, lock repairing, gun repairing, bicycle, lawn mower, phonograph, typewriter, musical instrument repairing, cash register, vending machine repairing, businesses, all of which the Employer is now an expert mechanic, having built up a business in each of these lines of business over a period of many years.

2. Teach the Employee the secrets of his business as applicable to the various branches of the business in order to make him more proficient in carrying on the business.

3. Teach the Employee who the customers of said business are, and after the Employee becomes competent to handle business introduce him to the customers and build up confidence in customers in letting the Employee do their business.

4. Pay as wages for a nine hour day, six day week, per month at the rate of Fifty ($50.00) Dollars a month. It shall be left to the sole discretion of the Employer as to raising wages in the future; and any prom-

ise of an increase in wages is void unless in writing signed by the Employer.

5. To hire the Employee for a period of ten years (10) from the date of signing this instrument; with an option of renewing it for another like term under the same conditions listed within this contract, if the Employee desires to remain in the businesses listed above.

6. Not to dismiss the Employee without cause; and it is agreed herein that the Employer shall be the sole judge as to the cause of dismissal.

IN CONSIDERATION OF THE ABOVE THE EMPLOYEE HEREBY AGREES TO DO:

1. Be studious in learning the keymaking and other businesses listed above and carried on by the Employer. To at all times show a willing spirit to be taught and guided by his Employer and Mr. Ridley Sr. That he shall try to the best of his ability to follow instructions.

2. To never divulge or let be known the secrets of the trade or business, that are either taught to him, or learned through working in said business.

3. That the consideration is as listed above in No. 4.

4. That if he voluntarily leaves the Employer's business, or is discharged herefrom, no matter from what cause, either during the ten year period next ensueing, or after the contract is discharged, he shall not for a period of seven years after work for hire, either on his own account, or as an employee for any one else in any of the above businesses listed in No. 1 in which he has been taught, in the City of Sheridan, Sheridan County, Johnson County, or Campbell County; all within the State of Wyoming.

5. That if after termination of the contract he desires to still work in the businesses listed in No. 1, the Employer has the option of again renewing the contract upon the same terms and conditions as listed within this Contract.

6. That during the relationship of Employer and Employee he will never at any time do business in any

of the above listed businesses in No. 1, unless so directed by his Employer, when the shop is closed.

DATED THIS 10 TH DAY OF JULY, 1939."

Plaintiff alleged in his petition that he complied so far as required of him with the terms of the foregoing contract. Defendant left plaintiff's employ on August 31, 1945, and proceeded to set up in business for himself in performing general mechanical repair work. Plaintiff sought to enjoin the defendant from conducting business for himself as above mentioned, in Sheridan County, Wyoming, Johnson County, Wyoming, and Campbell County, Wyoming. The City of Sheridan had a population, according to the census of 1940, of 10,529. No other large villages or towns are located in Sheridan County. Campbell County is situated east of Sheridan County; its county seat is Gillette, which, according to the 1940 census, had a population of 2,177. It is located 100 miles southeasterly from Sheridan. Campbell County has no other villages or towns of any importance. The County of Johnson is located south of Sheridan County; its county seat is Buffalo, with a population, according to the 1940 census, of 2,203. It is located 40 miles south of the City of Sheridan. Johnson County has no other important village or town. Defendant answered, admitting that he entered into the contract above mentioned, but claimed that in a number of things plaintiff failed to instruct him as he had agreed to do and that plaintiff failed to furnish to the defendant a suitable place in which to work. The result under the issues of the case, after trial, has already heretofore been stated.

As we construe the contract in the case at bar, the restrictive covenant not to engage in a competing business relates to seven years after the employment ceased for any reason. Hence we need not consider the law relating to a like restrictive covenant during the term

of the employment, the rule in the latter case being that the services of an employee must be of peculiar and unique character, which does not appear in this case. See Annotation 9 A. L. R. 1460-1461. The general principles governing a case similar to that before us are well settled. The case at bar is not unique unless it be that it seems to be the first case reaching an appellate court in which a general repair man of various mechanical devices is sought to be enjoined in going into business for himself after leaving the services of his former employer. The cases on the general subject are very numerous and we shall confine ourselves to the citation of comparatively few. Annotations on the subject are contained in 9 A. L. R. 1456; 20 A. L. R. 861; 29 A. L. R. 1331; 52 A. L. R. 1362; 58 A. L. R. 156; 67 A. L. R. 1002; 93 A. L. R. 121; 98 A. L. R. 963; 155 A. L. R. 652. The subject is also discussed in 17 C. J. S. 636, et seq.; 43 C. J. S. 571, et seq.; 28 Am. Jur. 301, et seq. We considered the rules applicable herein to some extent in Dutch Maid Bakeries vs. Schleicher, 58 Wyo. 374, 131 Pac. 2d 630. We do not think that it is necessary to discuss the defense that plaintiff did not furnish defendant a suitable place to work, or that he failed to teach the defendant the matters which he agreed to do.

The general principle applicable herein is stated in 17 C. J. S. 636, as follows: "Generally, while one may not be restrained from following all vocations for which he is fitted, or from doing productive work useful to the community, it is the rule in the absence of contrary statute that agreements by which an employee as part of his contract of employment undertakes not to enter into a competing business on leaving his employer's service are sustained if they are no wider than reasonably necessary for the protection of the employer's business, and do not impose undue hardship on the employee, due regard being had to the interests of the

public." Sections 513-515 of the Restatement of Contracts agree. Courts are less disposed to sustain an agreement which forms part of a contract of employment to refrain from subsequently engaging in competitive occupations than where similar agreements are attached to a contract of sale. There is likely to be greater hardship to the promissor and therefor injury to the public in the former case. 5 Williston on Contracts, Rev. Ed., Sec. 1643. Such contracts are not specially favored. Stoneman vs. Wilson, 169 Va. 239, 192 S. E. 816. It has been said that "sound public policy encourages employees to seek better jobs from other employers or to go into business for themselves. Contracts which hinder their so doing are strictly construed and rigidly scanned and are declared void unless necessary for the reasonable protection of the employer." Haut vs. Rossbach, 128 N. J. Eq. 77, 15 Atl. 2d 227, 228; the same case, 128 N. J. Eq. 478, 17 Atl. 2d 165; Irvington Varnish & Insulator Co. vs. Van Norde, 137 N. J. Eq. 134, 43 Atl. 2d 805. In Sternberg vs. O'-Brien, 48 N. J. Eq. 370, 22 At. 348, the court considered a contract wherein an employee agreed not to compete in the clothing business for one year after severing his connection with his employer. The court said in part: "A court of equity, in exercising its prohibitory power, must always proceed with the utmost caution and see to it that its power is not so exercised as to do more harm than good. The power exists to prevent irreparable wrong, and should not, therefore, be used in any case when its use will produce the very result it was designed to prevent. The rule is fundamental that an injunction should never be granted when it will operate oppressively or contrary to the real justice of the case, or where it is not the fit and appropriate method of redress under all circumstances of the case, or when the benefit it will do the complainant is slight in comparison with the injury it will do the defendant,

The great office of the writ is to protect and preserve, not to destroy." The burden is on the plaintiff to prove that the contract is fair, the restrictive covenants reasonable, and that they have a real relation to, and are really necessary for the protection of plaintiff in the business to which the covenants are an incident. Super Maid Cook-Ware Corp. vs. Hamil, 50 Fed. 2d 830; May vs. Lee (Tex. Civ. App.), 28 S. W. 2d 202; Byers vs. Trans-Pecos Abstract Co. (Tex. Civ. App.), 18 S. W. 2d 1096; Oak Cliff Ice Delivery Co. vs. Peterson (Tex. Civ. App.) 300 S. W. 107; Union Transfer & Storage Co. vs. Greve (Tex. Civ. App.), 131 S. W. 2d 796; Bowler vs. Lovegrove (1921) 1 Ch. Div. 642; Morris vs. Saxelby (1916) 1 A. C. 688; Mason vs. Provident Clothing & Supply Co., A. C. (1913), 724, 733. Dyar Sales & Machinery Co. vs. Bleiler, 106 Vt. 425, 175 Atl. 27, and Knapp vs. S. Jarvis Adams Co., 135 Fed. 1008, seem to hold the contrary. Furthermore, on review of the case by an appellate court, the question is as to whether or not the record discloses an abuse of sound judicial discretion. Union Transfer & Storage Co. vs. Greve, supra.

The application of broad general rules or principles, as mentioned above, to particular facts in a case is often not easy. There is involved in a case such as before us, first, the freedom of contract by which a person is held bound by an agreement into which he deliberately entered, and second, the freedom of work by which an employer is prohibited from restraining an employee from exercising energies in work for himself or for others to an extent greater than is necessary for the protection of the employer. These two rules must be harmonized, and being general rules may lead, and in fact have lead, to conflicting conclusions under similar state of facts, depending on the stress which was laid on the first or the second of these rules. Attwood vs. Lamont, 3 K. B. (1920) 571, 577. So, as an aid, courts

have from time to time applied or evolved in connection with the subject before us, more specific or subsidiary rules which it may not be amiss to consider herein.

(1)   A number of courts have held that in cases in which an employee is not guaranteed employment for any great length of time, as for instance, when he may be dismissed on short notice, the contract not to go into competitive business thereafter has been held to be void. Dockstader vs. Reed, 121 App. Div. 846, 106 N. Y. S. 795; Gilbert vs. Wilmer, 102 Misc. Rep. 388, 168 N. Y. S. 1043; Iron City Laundry Co. vs. Leyton, 55 Pa. Super. 93; Super Maid Cook-Ware Corp. vs. Hamil, 50 Fed. 2d 830; Schneller vs. Hayes, 176 Wash. 115, 28 Pac. 2d 273; Love vs. Miami Laundry Co., 118 Fla. 137, 160 So. 32; Byram vs. Vaughn, 68 Fed. Supp. 981; May vs. Lee, (Tex. Civ. App.) 28 S. W. 2d 202. The contrary has been held, however, in Sherman vs. Pfefferkorn, 241 Mass. 468, 135 N. E. 568; Granger vs. Craven, 159 Minn. 296, 199 N. W. 10, 52 A. L. R. 1356; Williston, supra, Sec. 1643. In view of the fact that in the contract in the case at bar the employer was made the sole judge of the cause of dismissal of the employee, it might at first blush appear, and it is contended by counsel for defendant herein, that the employee was not guaranteed employment for any length of time. However, the clause would probably be construed to mean that if the employee were discharged, a good and sufficient cause therefor should exist. Margulies vs. Oppenheimer, 159 Ill. App. 520; Lummus Cotton Gin Co. vs. Baugh, 29 Ga. App. 498, 116 S. E. 51. Hence the foregoing cases may not be applicable in the case at bar. It is not, however, necessary to decide the point.

(2)   A contract such as that before us must be reasonable in its restrictions as to time and territory. Tarr vs. Stearman, 264 Ill. 110, 105 N. E. 957; 28 Am. Jur. 302; 17 C. J. S. 637; Annotation 9 A. L. R. 1468, 1469.

We shall pass over that rule at the present and return to it later.

(3)   A contract of the nature here discussed per se, that is, standing by itself, without other elements entering into it, is void. Unless special facts appear which make the contract reasonable, an employer must be prepared to encounter competition even at the hands of a former employee. 17 C. J. S. 629, 633; Northwest Side Lumber Co. vs. Layton, 239 Ill. App. 82; Clark Paper & Mfg. Co. vs. Stenacher, 236 N. Y. 312, 140 N. E. 708, 29 A. L. R. 1325; Union Transfer & Storage Co. vs. Greve (Tex. Civ. App.) 131 S. W. 2d 796; Morris vs. Saxelby (1916) 1 A. C. 688; Attwood vs. Lamont, L. R. (1920) 3 K. B. 571, 588, et seq.; McCluer vs. Super Maid Cook-Ware Corp., 62 Fed. 2d 1426; Murray vs. Cooper, 51 N. Y. S. 2d 935, 268 App. Div. 411. Thus in Northwest Side Lumber Co. vs. Layton, supra, the court said: "So far as appears from the contract or the bill, the restrictive clauses of the agreement relate solely to the competition per se and therefore are prima facie invalid, and to establish their validity it is incumbent on complainant to prove that there existed some special facts or circumstances which rendered them reasonably necessary for the protection of its business." In Bowler vs. Lovegrove, L. R. (1921) 1 Ch. Div. 642, 650, the court said: "These decisions show clearly that, as the present case is one between employer and employee, the clause is prima facie invalid, and that to establish its validity it is incumbent on the plaintiffs to prove that there existed some special circumstances which rendered it reasonably necessary for the protection of the plaintiffs' business." In Super Maid Cook-Ware Corp. vs. Hamil, supra, the court, speaking of a covenant similar to that in the case at bar, said: "For, fundamentally, in and of themselves these covenants are in restraint of trade, and unenforceable. It is a settled principle of law that no

man may, per se, contract with another that that other will not follow a calling by which he may make his livelihood. * * * It is never the covenant itself, but the covenant in relation to the facts of the situation or contract to which it is incidental, which may be valid."

(4)   Now what are the special facts, either one or more of which would make a restrictive covenant relating to entering into competitive business reasonable, assuming that it would also be reasonable as to time and space? The courts are quite well agreed as to what they are, although not always enumerating all of them, or in the same way. They are, according to Williston, supra, Sec. 1652, as follows: (a) The possession by the employer of trade secrets, communicated to the employee during the course of his services. (b) Confidential information communicated by the employer to the employee, aside from that involved in trade secrets. That might consist of communicated information as to a unique business method, as, for instance, shown in Ideal Laundry Co. vs. Gugliemone, 107 N. J. Eq. 108, 151 Atl. 617. (c) *Special* influence obtained by the employee during the course of his employment with the customers of the employer, or as otherwise expressed, where the services are of such character that the employee's name carries with it the good will of the employer's business. Simms vs. Patterson, 55 Fla. 707, speaks of "peculiar influence" over customers as necessary in such case. In other words, the special facts above mentioned consist of (x) trade or business secrets, communicated to the employee, and (y) special or peculiar influence of the employee with plaintiff's customers.

In Menter Co. vs. Brock, 147 Minn. 407, 180 N. W. 553, 20 A. L. R. 857, the court said: "Where the services have been of such a character that the employee's name carries with it the good will of the employer's

business, or where the employee has obtained knowledge of secrets in such business the disclosure of which would result in irreparable damage to the employer, it appearing that the subsequent employment was to obtain the benefit of the secrets, or there was danger that such secrets would be disclosed in the subsequent employment, injunctive relief will be granted." In Club Aluminum Co. vs. Young, 263 Mass. 223, 160 N. E. 804, the court said: "The use of trade or business secrets gained through employment may properly be made the subject of restrictive agreements. In this class fall also agreements not to use lists of customers and not to entice old customers away by any form of solicitation. Knowledge confidentially gained in the course of employment may be made the subject of restrictive agreement and acts in derogation of such a contract will be restrained." In Dyar Sales & Machinery Co. vs. Bleiler, 106 Vt. 425, 175 Atl. 27, the court said: "In this class the question whether the services are unique or extraordinary is not usually involved, but the right to equitable relief depends upon whether, by reason of the character of the employment or the services rendered by the employee, he has been able to acquire such close and intimate relations with the employer's customers or patrons, or obtain such knowledge of the employer's business, that, if he were to use the acquanitanceship or knowledge thus obtained in a competing business, in breach of his agreement, the result would cause irreparable injury to the employer, for which he has no adequate remedy at law." In Morris vs. Saxelby, (1916) 1 A. C. 688, 702, the court, speaking of the employer said: "He is undoubtedly entitled to have his interest in his trade secrets protected, such as secret processes of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old

customers by solicitation or such other means enticed away from him. But freedom from all competition per se apart from both these things, however lucrative it might be to him, he is not entitled to be protected against. He must be prepared to encounter that even at the hands of a former employee." See also Annotation in 9 A. L. R. 1468.

Let us examine the foregoing factors as applicable in the case at bar. Counsel for the plaintiff seems to think that everything that the defendant learned in plaintiff's shop consisted of confidential information and trade secrets. Counsel is in error. We find no confidential information which was imparted to the defendant in this case during the course of his employment. The business method of the plaintiff in so far as the record shows, is nothing out of the ordinary. Plaintiff's main work consisted, among others, of lock work of all sorts, including key making, the opening of safes and changing the combinations thereof. We gather from the testimony that lock and key work is learned mainly from certain code books published by experts in that line. Plaintiff claims that the main part of his teaching in that connection was to learn how to read these codes while the defendant testified that these codes explained themselves and that he could read them. Plaintiff testified that only lock smiths could buy these books. Plaintiff's work consisted partly of bicycle repairing and the testimony shows that defendant had considerable knowledge of that, in fact he testified that he was an expert in that kind of work. Lawn mowers, too, are repaired in plaintiff's shop, and a machine is used in that connection, but that is bought in the market and there is nothing secret about that. Various other instruments such as vending machines, typewriters, and adding machines were being oiled, cleaned and to some extent repaired in plaintiff's shop. Counsel for the plaintiff has not cited us to any cases which hold

that any of these matters involved trade secrets. A process commonly known in the trade is not a trade secret and will not be protected by an injunctoin, a trade secret being a plan or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it. Victor Chemical Works vs. Iliff, 299 Ill. 532, 132 N. E. 806, 811; Progress Laundry Co. vs. Hamilton, 208 Ky. 348, 270 S. W. 834, 835; Bell and Bogart Soap Co. vs. Petrolia Mfg. Co. et al., 25 Misc. Rep. 66, 54 N. Y. S. 663; Bristol vs. Equitable Life Assurance Soc. of N. Y., 132 N. Y. 264, 30 N. E. 506; Hopkins on Unfair Trade, P. 158, states: "In every case where the plaintiff seeks protection for a trade secret, it must appear that it really is a secret. If a so-called secret process is known to others in the trade, no one will be enjoined from disclosing or using it." If a code tells all about keys and locks and safes it cannot be said to be a secret. Bicycle repairing, lawn mower repairing and repairing other mechanical devices mentioned above is done almost every day throughout the country. The method of doing so is generally known and cannot be held to be secret. One man may be more skillful and more efficient than another in doing so. If he is of ordinary intelligence he will learn to be more skillful and efficient as he gains experience. Trade secrets may not be construed as consisting of knowledge and efficiency which the defendant obtained or procured through his experience. Inboden vs. L. W. Hawker, Inc., et al., (Ohio App.), 41 N. E. 2d 271, 277.

(5) Skill and efficiency of the employee in connection with the work or trade of the employer is not a factor that may be considered in determining as to whether or not an agreement not to compete is reasonable or fair even though it has been attained or improved through instruction of the employer. Counsel for plaintiff has taken that as a factor to be considered

and has perhaps laid the greatest stress upon it in thinking that the trial court was wrong. In this counsel is clearly wrong. As is said in 28 Am. Jur. 306, "skill and knowledge acquired or information obtained cannot be left behind so long as those things exist within the mind of the employee. They become a part of the employee's equipment for the transaction of any business in which he may engage." In Club Aluminum Co. vs. Young, supra, the court said: "But an employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment. The employee may achieve superiority in his particular department by every lawful means at hand, and then, upon the rightful termination of his contract for service, use that superiority for the benefit of rivals in trade of his former employer." Williston, supra, in Sec. 1652, states: "An employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment, for it becomes part of the employee's personal equipment as distinguished from trade secrets, special influence with customers or confidential information acquired during the course of the employment." See also to the same effect, Molina vs. Barany, 56 N. Y. S. 2d 124, 133; Murray vs. Cooper, 268 App. Div. 411, 51 N. Y. S. 2d 935; Clark Paper & Manufacturing Co. vs. Stenacher, 236 N. Y. 312, 140 N. E. 708, 29 A. L. R. 1325. In Morris vs. Saxelby (1916) 1 A. C. 688, 714, it was said: "Trade secrets, the names of customers, all such things which in sound philosophical language are denominated objective knowledge—these may not be given away by a servant; they are his master's property, and there is no rule of public interest which prevents a transfer of them against the master's will

being restrained. On the other hand, a man's aptitudes, his skill, his dexterity, his manual or mental ability—all those things which in sound philosophical language are not objective, but subjective—they may and they ought not to be relinquished by a servant; they are not his master's property; they are his own property; they are himself. There is no public interest which compels the rendering of those things dormant or sterile or unavailing; on the contrary, the right to use and to expand his powers is advantageous to every citizen, and may be highly so for the country at large." Williston, supra, in Sec. 1646 states that the importance of the distinction here suggested may be conceded, but that objective and subjective knowledge is so frequently entwined that a restrictive covenant in such case may be reasonable. We do not find that there is any objective knowledge involved in the case at bar which would make the restrictive covenant in this case reasonable unless it be the special influence with customers acquired by the defendant during the course of his employment. We shall, accordingly, turn to the consideration of that subject.

If the plaintiff herein were entitled to an injunction herein, confined perhaps in scope and limited in time and space, it would be solely on account of the fact that the defendant gained an influence with the customers of the plaintiff during his employment, so that it would be unfair to the plaintiff that the defendant should at once enter into competition with him. Restrictive covenants against competition have frequently been upheld whereby salesmen, agents, canvassers and other employees who come into personal contact with their employer's customers agree not to engage in a competitive business within a limited time or area after leaving the services of their employer. 17 C. J. S. 637. Numerous illustrations are given in the text just cited. To pirate the customers of a former employer is

like pirating his good will. See Capital Laundry Co. vs. Vannozzi, 115 N. J. Eq. 26, 169 Atl. 554. Still it depends on the circumstances of the case as to whether or not an injunction should issue. Everyone who lives any length of time in any community, as an employee, is bound to make acquaintances and friends and if that mere fact would authorize an injunction such as prayed herein we fear, as stated in Club Aluminum Co. vs. Young, supra, there would be left but "a shadow of the general rule against the validity of restrictive covenants upon individual liberty of action as to one's trade or calling, and would establish in its stead what has hitherto been treated as an exception." The court in Love vs. Miami Laundry Co., supra, stated in connection with the driver of a laundry truck that the employer acquired no property interest in the former's God given or self cultivated, ingratiating personality. The learned author of Williston on Contracts, supra, indicates, as already noted, that when an employee obtains a *special* influence with the customers of the employer a contract not to enter into competition will be held reasonable, other requisites being present. A case along that line is Levy vs. Cosmos, 221 App. Div. 533, 224 N. Y. S. 486. The plaintiff in that case was successor of Brew Company and was engaged in supplying clean coats, aprons, towels and linens to various customers in New York and vicinity. One Pease, when in plaintiff's employ, agreed not to compete with plaintiff directly or indirectly for 3 years after leaving the services of plaintiff. But he did, contrary to the terms of his contract and entered into the employ of the defendant Cosmos who was engaged in the same business as the plaintiff. The contract was held invalid and the defendant through Pease was permitted to even solicit former patrons of plaintiff, mainly on account of the fact that customers were generally known. The court said in part: "Cosmos was well acquainted with many

of the customers formerly served by the Brew Company, and was on intimate terms with several, who were Greeks and fellow countrymen of the said defendant. The business of supplying aprons, coats, and towels had no trade secrets or secret processes of manufacture. The customers served were barbers, grocery stores, butchers, and, in fact, every sort of business whose employees wore white coats or aprons. The establishments served carried on their businesses openly, notoriously, and publicly, and the names and addresses of such customers were readily ascertainable from the public directory or from a mere inspection by passersby. Pease possessed no trade secrets or other exclusive information as to the names of the patrons whom he served for his employer." In the case of Standard Oil Co. vs. Bertelsen, 186 Minn. 482, 243 N. W. 701, the defendant conducted an oil and gas station in a small community for the plaintiff and he agreed that he would not, for a period of one year from the date that his employment should be terminated, work for any one else in the same business at that place. After the employment was terminated defendant obtained employment with another oil company, a competitor of the plaintiff, at the same place. The evidence showed that defendant, to some extent in any event, solicited business from former customers of plaintiff, although the court said that it could not assume that any substantial loss to plaintiff was caused. An injunction against the defendant was denied. The court said in part: "The defendant resided with his children in the community of Buffalo Lake. He had lived there for some 17 years, was known and had his friends and relatives there. To require him either to change his occupation, which he had followed for some three years, or to remove to a different community, was a harsh burden on him. A man's right to labor in any occupation in which he is fit to engage is a valuable right, which should not be

taken from him or limited by injunction except in a clear case showing the justice and necessity therefor." The testimony in the case at bar shows that the defendant advertised his shop and in some instances the advertisement referred to the fact that he had formerly been with Ridley's Repair Shop. There is also some testimony of personal solicitation on his part. The sum and substance of that testimony as we read it is that the solicited business from former customers of his own and from people whom he had known all of his life. Defendant at the time of the trial of this case was 52 years old and he stated that he had lived in Sheridan all of his life. He had been engaged in the business of repairing bicycles and automobiles before entering the services of the plaintiff. The City of Sheridan is comparatively small. Plaintiff's customers would naturally be known to almost anyone who would take the trouble of making inquiries. The rule applicable in the New York and Minnesota cases just cited would seem to be applicable here. In any event, plaintiff sought to hold the defendant in his employ for 10 years, and restrain him from going into competition with him for 7 years thereafter, a total period of 17 years. The main purpose seems to have been to prevent the defendant from quitting the services of the plaintiff, and not primarily to prevent him from divulging secrets of the plaintiff which he had no right to divulge. Such contract is not favored in equity. Clark Paper & Mfg. Co., supra, and Annotation in 29 A. L. R. 1331. Moreover, we think that whatever special influence the defendant may have acquired with the customers of plaintiff would have disappeared in a comparatively short period of time, and that his contract that he would not engage in competitive business for a period of seven years after his services for plaintiff terminated, is too long, at least we cannot say that the trial court abused its discretion in holding that period to be unreasonable. Clark Paper

& Mfg. Co. vs. Stenacher, supra, (8 years' restriction too long) ; New York Linen Supply & Laundry Co. vs. Schachter, 125 Misc. Rep. 805, 212 N. Y. S. 72, (5 years' restriction too long), affirmed in 221 N. Y. S. 869; Unity Coat & Apron Co. vs. Battist, 264 N. Y. S. 801, (5 years' restriction too long) ; Consolidated Syrup Corporation vs. Kaiser, 22 N. Y. S. 2d 307, (5 years' restriction too long) ; Schmidl vs. Central Laundry & Supply Co., 13 N. Y. S. 2d 817, (10 years' restriction too long—9 months allowable) ; Union Transfer & Storage Co. vs. Greve, supra, (5 years' restriction too long). We think, moreover, that the contract in question is unreasonable as to territory. This is not a case dealing, for instance, with the salesman or special customers in a special line of business. It deals with repair work of various mechanical devices necessary to be done for numerous inhabitants of every community. Persons who are in need of such repair work ordinarily need or want it done promptly and it is to the public interest that their desires and needs be fulfilled. As stated in Tarr vs. Stearman, 264 Ill. 110, 105 N. E. 957: "In construing all such contracts, however, the interests of the public must be held paramount. In all such contracts the law has regard not only to the financial profits to be made from trades or professions, but the convenience of the public as well. The convenience of a given community or locality will be promoted if every such locality has it proper accommodation and service from every art, trade, and profession." It would be rather burdensome, if not, in some instances, wholly impractical for the citizens of Gillette, 100 miles distant from Sheridan, to send, say, their bicycles or lawn mowers or other mechanical contrivances to the plaintiff at Sheridan, or to have their keys made or their safes opened or combinations changed by someone in or from Sheridan. It would be contrary to the public interest for the plaintiff to be able to deprive the citizens

of Gillette of the opportunity of having the defendant present at that place so that all such work involved in this case could be done as promptly as possible there. The contract in question here attempts to do that, and what is applicable to Gillette is equally true of Buffalo.

The judgment of the trial court, accordingly, is affirmed.

RINER, C. J., and KIMBALL, J., concur.