George Edward HUTTON and Beatrice Hutton, Appellants,

v.

METHODIST HOME, Appellee.

No. 18453.

Court of Civil Appeals of Texas, Fort Worth.

April 2, 1981.

Rehearing Denied May 21, 1981.

**290** 

John R. Creighton, Mineral Wells, for appellants.

Naman, Howell, Smith, Lee & Muldrow, and Alexander M. Haw and Beverly Willis, Waco, for appellee.

## OPINION

HUGHES, Justice.

Beatrice Hutton and George Edward Hutton have appealed the summary judgment granted Methodist Home in a will construction suit. They are the heirs of L. G. Hutton, deceased. At the death of L. G. Hutton his heirs (the Huttons) succeeded to his status as a co-defendant in a suit filed by Minnie Price and Esther Williams. Methodist Home was the other co-defendant. Methodist Home being a charitable organization, the Attorney General of the State of Texas is a party. Methodist Home and the Huttons filed corresponding cross-claims against each other and both moved for summary judgment. Trial court granted Methodist Home's motion for summary judgment, and thus vested title to certain land in Methodist Home. The Hutton's motion which sought declaratory relief was denied.

We affirm.

On November 19, 1948, W. E. and Minnie Price executed a joint and mutual will pursuant to a contract. W. E. Price died in 1957 and upon Minnie Price's application the joint and mutual will was admitted to probate as his last will and testament.

At the time of the execution of the will, L. G. Hutton, a long time friend and associate of the Prices', was a tenant on the land which is the subject of this dispute. L. G. Hutton continued to hold the land under a series of consecutive five-year *written* leases until May 1, 1972.

In 1971 Minnie Price deeded the land to her niece, Esther Williams. On March 29, 1972, Minnie Price and Esther Williams filed suit against L. G. Hutton and the Methodist Home seeking: construction of the joint and mutual will; termination of the lease under which L. G. Hutton was holding the land; and validation of the sale made to Esther Williams.

After May 1, 1972, Minnie Price refused to execute further leases. L. G. Hutton retained possession of the land and tendered rental payments into the registry of the court making his last payment of record thereto on September 19, 1973.

Minnie Price died on February 14, 1974. On February 18, 1974, L. G. Hutton wrote a letter to Methodist Home purportedly giving notice under the provisions of the joint and mutual will of the exercise of his option to purchase the land belonging to the estates of W. E. and Minnie A. Price. No purchase money was tendered at that time. After Minnie Price's death, L. G. Hutton continued to hold the land making annual rental payments to Methodist Home.

L. G. Hutton died on June 7, 1976, with the Huttons being substituted in his stead. Methodist Home refused to accept a $24,-000.00 purchase payment tendered by the Huttons.

Methodist Home filed a cross-action against the Huttons seeking, among other things, a declaratory judgment that the title to the land passed to and vested in

Methodist Home under the terms of the joint and mutual will free and clear of any claims on the part of the Huttons. The Huttons in turn filed a cross-action against Methodist Home seeking declaratory judgment construing the will.

On October 12, 1977, an agreed judgment was rendered settling the controversy as between Esther Williams and the independent executor of the estate of Minnie Price on the one hand and George Hutton, Beatrice Hutton, Methodist Home and the Attorney General of the State of Texas on the other hand. Esther Williams and the executor were thereby dismissed from the suit. The agreed judgment was rendered expressly without prejudice to the cross-actions which had been filed by the Huttons and Methodist Home.

Both the Methodist Home and the Huttons filed opposing motions for summary judgment and responses thereto. The trial court granted Methodist Home's motion and denied the Huttons' motion.

The Huttons, by their first point of error, assert that the trial court erred in granting Methodist Home's motion for summary judgment and denying their own motion for summary judgment. The other points expound upon the first point of error.

Pertinent provisions of the joint and mutual will are:

"That we, W. E. Price and wife, Minnie A. Price, of the County of Jack and State of Texas, realizing the uncertainty of life and desiring to settle our worldly affairs while we have the strength and capacity to do so, do make and publish this as our last will and testament,—hereby revoking any will or wills by us or either of us at any time heretofore made;

" . . .

"*Second*: We give, devise, and bequeath all of our property, of whatsoever character, and wheresoever situate,—as it is held and exists at the death of the survivor of us,—to one Methodist Orphans Home at Waco, Texas,—subject to the following provisions and conditions:

" . . .

"(2) During the time our said real estate is held by the survivor of us, such *survivor shall be fully authorized to renew and extend the agricultural and grass leases on same; and at the death of the survivor of us, L. G. Hutton, the present leasee of the said 1184 acres of ranch land, at his option, shall have and is hereby given an extension of an additional five years on the term of the lease under which he is holding the land at that time,*—that is, his lease shall be extended by operation of this will, at his option, an additional five year period beginning at the expiration of the term of the lease under which he is then holding, at $1,000.00 per year,—out of which $1,000.00 he shall pay all taxes legally assessed against the property, if any, and remit the remainder to the said Methodist Orphans Home. Also, if the said L. G. Hutton exercises his option to extend the said lease, from the time of the death of the survivor of us to the date of the final expiration of the said extended lease, his lease shall be construed as covering the said 16 acres in the town of Perrin and the improvements thereon, at no additional cost,—that is,—the $1,000.00 per year to cover the ranch lands and the said 16 acres for that period;

"(3) *At the expiration of the said extended lease to the said L. G. Hutton,—or, at the expiration of the lease under which the said L. G. Hutton is holding at the date of the death of the survivor of us, if he does not exercise his option to accept the additional five year extension,—the said L. G. Hutton shall have and is hereby given the option to take the said 1200 acres, more or less, of ranch and town lands, with the improvements thereon and mineral rights therein, by paying to the said Methodist Orphans Home the sum of twenty-four thousand ($24,000.00) dollars,*—that is in that event, upon the acceptance and exercise of said option at that time and the payment of the $24,000.00 by the said L. G. Hutton to · the said Methodist Orphans Home, title to the said property shall pass to and vest in the said L. G. Hutton by virtue of this will,—that is, in that event and upon the exercise of such option and

the payment of the said amount, the said 1200 acres is hereby devised to the said L. G. Hutton, together with the improvements thereon and all the minerals and mineral rights therein;

". . . ." (Emphasis ours.)

Under their second point of error the Huttons take the position that the entire scheme of the will demonstrates a plan under which Hutton was to have leases and therefore the recognition in the will of the authority of the survivor to execute leases in no way diminishes the plan of the will that entitled L. G. Hutton to the leases.

It is asserted in their third point of error that the trial court erred for the reason that upon the death of the survivor of the Prices, L. G. Hutton had the right to and did exercise, unequivocally, his option to purchase the ranch lands.

In construing the provisions of the will to determine the intent of the testators, we must consider the will in its entirety and harmonize its terms giving effect to all its parts. *Johnson v. Stark*, 585 S.W.2d 900 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.); *First United Methodist Church v. Allen*, 557 S.W.2d 175 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.).

A reading of the will indicates that two options in favor of L. G. Hutton are contained within its provisions. Both options are in reference to the lease under which L. G. Hutton was holding the land at the death of the survivor. The first option arose at the death of the survivor, Minnie Price. At that time, by operation of the will, L. G. Hutton, at his option, was to be given an "extension of an additional five years on the term of the lease under which he is holding." There appears to be no question that L. G. Hutton did not exercise this option.

The controversy here pertains to the second option which was an option to purchase the land. The time provided in the will for the exercise of this option was "[a]t the expiration of the said extended lease to the said L. G. Hutton,—or, at the expiration of the lease under which the said L. G.

Hutton is holding at the date of the death of the survivor of us, if he does not exercise his option to accept the additional five year extension, . . . ."

Minnie Price, as the survivor was "authorized" to renew or extend the leases. She was therefore vested with the authority to refuse to execute further leases. We hold that, pursuant to this authority, she had the power, which she exercised, to destroy the two options contained within the will in that she could and did prevent L. G. Hutton from holding *under a written lease* at the time of her death.

Moreover, even if we agree with the Huttons' argument that L. G. Hutton had the right to consecutive five-year leases during the lifetime of the survivor of the Prices, our holding would still be the same because the option to purchase the land was not exercisable until April 30, 1977—almost eleven months after the death of L. G. Hutton.

The Huttons' fourth point of error asserts that the trial court erred for the reason that the rights and obligations under the contract that resulted from the unequivocal acceptance of the testamentary offer (option) by L. G. Hutton, upon his death, passed to and vested in the Huttons, his heirs-at-law. We disagree.

To be effective the exercise of an option must be absolute, unconditional, and in strict compliance with the terms and conditions of the options. *White v. Miller*, 518 S.W.2d 383 (Tex.Civ.App.—Tyler 1974, writ dism'd).

We hold that there was not a strict compliance with the terms of the option because there was no lease existent at the death of Minnie Price and even if there was a lease existent at her death L. G. Hutton died before the expiration of the five-year lease that is so strongly argued to have been existent. Hence, in that L. G. Hutton had no contractual rights, neither did his heirs. Absent an indication of a contrary intent, a testamentary option is personal to the optionee, and does not sur-

vive his death so as to be exercisable by his heirs. See: *Austin Presbyterian Theological Sem. v. Moorman*, 391 S.W.2d 717 (Tex. 1965); Annot., 28 A.L.R.2d 1167 (1953).

There have been no assertions made that the provisions of the Price will are ambiguous in any respect, nor have any other questions of fact been raised by the parties. The construction of this will was presented as a question of law for the court. We overrule the Huttons' points of error in holding that Methodist Home is entitled to a judgment vesting title to the land in it as a matter of law.

The judgment rendering summary judgment in favor of Methodist Home and denying the motion for summary judgment submitted by the Huttons is affirmed.