**L.E. "Gene" HENSHAW et al., Petitioners,**

v.

**Louis KROENECKE et al., Respondents.**

No. C–1610.

Supreme Court of Texas.

July 20, 1983.
Rehearing Denied Oct. 5, 1983.

Jon Mercer, Houston, for petitioners.

Butler, Binion, Rice, Cook & Knapp, Robert M. Hardy, Jr., Houston, for respondents.

SPEARS, Justice.

Gene Henshaw brought suit against Louis Kroenecke to recover liquidated damages under a covenant not to compete contained in a partnership agreement. The trial court rendered a take nothing judgment against Henshaw. The court of appeals affirmed, holding that the covenant not to compete was unreasonable and unenforceable. Unpublished opinion pursuant to Tex.R.Civ.P. 452. We reverse the judgment of the court of appeals and remand the cause to that court for a consideration of Kroenecke's insufficiency points of error.

In 1972 L.E. "Gene" Henshaw was operating a sole proprietorship in Houston under the name of Gene Henshaw & Associates offering management consulting services to physicians and dentists. Louis Kroenecke was employed by a company providing similar services in Iowa. Henshaw proposed that Kroenecke join his business, and on April 6, 1972 the two executed a partnership agreement. Kroenecke executed a promissory note for $12,000 to purchase 35% of Henshaw's business. The partnership name remained Gene Henshaw & Associates.

The 1972 Articles of Partnership contained the following provisions:

17. COVENANT NOT TO COMPETE

Kroenecke agrees that upon his voluntary termination of this agreement he will not compete with Henshaw in the business as then carried on by the partnership for a period of three years from the date of termination. The term 'competition' for the purposes of this section shall have the limited definition of providing any similar services to the then clients of the partnership or to those clients who have ceased being clients within the twelve months immediately preceding such termination.

As liquidated damages, the parties agree that no injunction shall lie for breach of this section but that Kroenecke will pay to Henshaw an amount calculated as 12 times the average monthly partnership billing to each client or prior client with whom Kroenecke does business in violation of this covenant. Such average monthly partnership billing shall be computed by including only those months in which the partnership billed said client or past client in the twelve months preceding such termination. Henshaw agrees that there will be no geographical limitation under this covenant.

In October of 1974, Henshaw and Kroenecke each incorporated their respective interests. Henshaw formed Gene Henshaw & Associates, Inc. and Kroenecke formed Lou Kroenecke & Associates, Inc. On October 15, 1974, the Gene Henshaw & Associates partnership agreement was amended by an addendum whereby each partner substituted his own personal corporation as a partner. The addendum ratified and reaffirmed all provisions of the original partnership agreement.

At the same time the two corporations executed another partnership agreement for a partnership named Henshaw, Kroenecke & Associates. This agreement provided that the new partnership would commence doing business on November 1, 1974, and expressly stated that the new agreement did not "alter or amend" the 1972 partnership agreement. The 1974 partnership agreement contained a separate covenant not to compete to be signed independently. This covenant prevented the employees of the two corporations from competing with Henshaw, Kroenecke & Associates. Neither Henshaw, Kroenecke nor their corporations ever executed the restrictive covenant to the 1974 partnership agreement.

In June 1976, disputes arose between Henshaw and Kroenecke concerning the terms of their partnership. The only rele-

vant dispute was over the covenant not to compete. Kroenecke maintained that the covenant should be changed to apply to both of them and that the liquidated damages should be in a lump sum. Kroenecke left a note for Henshaw demanding that the covenant be removed. Henshaw interpreted this as a termination and set the termination date for July 31, 1976. After dissolution Henshaw filed suit to recover liquidated damages in the amount of $63,744 for those clients Kroenecke took with him.

At trial, four special issues were submitted to the jury. In answer to these issues the jury found: (1) that Kroenecke voluntarily terminated the partnership; (2) the purpose of the liquidated damages provision was not to secure the performance of Kroenecke of the non-competition agreement; (3) the purpose of the non-competition agreement was to protect Gene Henshaw and his interest only; and (4) the non-competition agreement was not an unreasonable restraint of trade.

The trial court held that special issue no. 4 was a question of law that should not have been submitted to the jury and that special issue no. 3 denied recovery to Henshaw because only the partnership was entitled to the benefits of the covenant. Therefore, a take nothing judgment was rendered against Henshaw.

 An agreement not to compete is in restraint of trade and will not be enforced "if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (Tex.1960); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 188. The question of whether a covenant not to compete is reasonable is a legal question for the court. *Electronic Data Systems Corp. v. Powell,* 524 S.W.2d 393, 397 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236, 238 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.).

In this case, the court of appeals held that only the partnership was entitled to the benefit of the noncompetition agreement, and therefore, the noncompetition clause which the jury found benefited only Henshaw was unreasonable and unenforceable. We hold that Henshaw was entitled to the protection of the noncompetition agreement.

 Henshaw started the consulting business and was operating it as a sole proprietorship. When Kroenecke came into the business, a partnership was formed. The covenant not to compete was an integral part of the pre-partnership formation negotiations. Henshaw was the person for whose benefit the restraint was imposed. Kroenecke, however, also benefited by coming into an established business. The covenant was agreed upon before the partnership was formed and was an agreement between Henshaw and Kroenecke individually, not Kroenecke and the partnership. Henshaw had a right to protect himself from the possibility that Kroenecke would establish a rapport with the clients of the business and upon termination take a segment of that clientele with him. *See Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.) Henshaw had a legitimate interest to protect, and therefore, the covenant was reasonable.

Here, we are dealing with a two man partnership. Before the partnership was formed, Henshaw was the business entity. The noncompetition agreement did not take effect until the termination of the partnership, and at that time Henshaw, again, was the continuing business entity. Henshaw clearly had a legitimate interest to protect. Under the court of appeals holding that only the pre-termination business entity was entitled to the benefit of the covenant, the partners of a two-man partnership could never enter into an enforceable covenant not to compete. Furthermore, Kroenecke would apparently be entitled to 45% of the benefit of the covenant triggered by his own breach.

We further hold the liquidated damages provision is reasonable and enforceable. A liquidated damages provision must be a reasonable forecast of just compensation for the harm that is caused by the breach. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236, 238 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.). The jury found that the purpose of the liquidated damages provision was not to secure the performance of Kroenecke of the noncompetition agreement. The provision, therefore, was not a penalty. The amount of liquidated damages, one year's average billing, is not an unreasonable sum, but is based on a formula representing the parties estimation of the value of the business which would be taken in the event of breach.

Having held that the noncompetition/liquidated damages provision is reasonable and enforceable, the next question is whether the 1974 partnership agreement created a new partnership or was merely a successor to the 1972 partnership incorporating the same noncompetition agreement. Henshaw argues that the 1974 partnership was the direct successor of the 1972 agreement, and therefore, the terms of that agreement remained in effect. We agree. On October 15, 1974 Henshaw and Kroenecke executed a second addendum to the 1972 partnership. It stated:

Both parties agree that each of them will be permitted to contribute his interest in the partnership known as GENE HENSHAW & ASSOCIATES to a separate corporation controlled by each of them without causing any of the provisions of that Articles of Partnership dated April 6, 1972 to become inoperative or terminate in any way. This shall not be considered a voluntary termination under Article 16(a) of said Agreement.
The parties hereby ratify and reaffirm all provisions of that Articles of Partnership executed April 6, 1972 regarding the rights and duties between the two of them except to the extent they are altered by this Agreement.

This addendum evidences Henshaw's and Kroenecke's intent to merely change the members of the partnership, and at the same time reaffirm and ratify all of the provisions of the 1972 agreement.

On the same day, Gene Henshaw, Inc. and Louis Kroenecke, Inc. signed the 1974 partnership agreement. Paragraph 17 of this agreement provides:

This agreement does not alter or amend those Articles of Partnership between L.E. Henshaw and Louis Kroenecke dated April 6, 1972, as amended.

Paragraph 17 of the 1974 agreement was an integration of the provisions of the 1972 agreement into the 1974 contract. Specifically, the covenant not to compete in the 1972 agreement was expressly reaffirmed, and therefore, it became a provision of the 1974 partnership agreement. An exhibit to the 1974 agreement was a covenant to be signed by the employees of the partnership. It was not signed by Henshaw or Kroenecke. However, it was not necessary for them to sign that covenant since the covenant not to compete in the 1972 contract, applying to them individually, was still in effect. Therefore, we hold that the 1974 partnership was the successor of the 1972 partnership, and the 1972 covenant not to compete was incorporated into the 1974 partnership.

The only remaining issue is whether Henshaw has proved his damages. No special issues were submitted to the jury regarding damages, and Kroenecke contends that Henshaw has waived his claim for money damages by failing to request a special issue on the question.

The partnership agreement contained a formula for the calculation of liquidated damages. This formula was based on the prior twelve months billings to clients divided by the total months billed. Henshaw's Exhibit No. 8 was a stack of ledger cards on the clients that Kroenecke continued to service after termination. Exhibit No. 9 names the clients which Kroenecke serviced. This exhibit also states the average monthly billing to each client. The ledgers and the list of clients were admitted

into evidence at trial. Kroenecke did not challenge the accuracy of the ledger cards or the accuracy of any mathematical calculations. The evidence, therefore, was uncontroverted. Undisputed or uncontroverted matters need not be submitted to the jury. *Dial Finance & Thrift Co. v. Dennis,* 392 S.W.2d 717, 719 (Tex.Civ.App.—Amarillo 1965), *reversed on other grounds,* 401 S.W.2d 803 (Tex.1966). We, therefore, hold Henshaw proved his damages as a matter of law. We note that, while the evidence is uncontroverted, mathematical errors appear in the calculations of the total damages asserted by Henshaw and should be corrected upon remand.

We conclude that the court of appeals erred in affirming the trial court's judgment. The court of appeals, however, did not address Kroenecke's points of error alleging insufficiency of the evidence. Since we do not have jurisdiction to consider them, we remand the cause to the court of appeals for consideration of those points.

WALLACE, J., dissents in an opinion in which KILGARLIN, J., joins.

WALLACE, Justice, dissenting.

I respectfully dissent.

On April 6, 1972, the Articles of Partnership of Gene Henshaw and Associates were executed. The partners were two individuals, Gene Henshaw and Louis Kroenecke.

On October 15, 1974, the 1972 Articles were amended to permit Henshaw and Kroenecke individually to transfer their respective interests in the partnership to separate, newly formed corporations totally owned by each of them. That amendment provided that it would not cause any of the provisions of the Articles of Partnership dated April 6, 1972, to become inoperative or terminate in any way.

Had nothing more been done, the 1972 partnership would have remained in effect as per the amendment. However, on the same date, October 15, 1974, the two new corporations entered into a separate second partnership as evidenced by the Articles of Partnership of Henshaw, Kroenecke & Associates. The new partnership was funded by a transfer of the assets of the old partnership to the new one and commenced operations on November 1, 1974. This new partnership did business until September 1, 1976.

Article 16 of the agreement provides:

### COVENANT NOT TO COMPETE

All employees of each partner will be required to execute a covenant not to compete with the partnership in the form attached hereto as Exhibit A.

Though the form was attached to the Articles of Partnership, it was never in fact executed by either Kroenecke, Henshaw, or the respective corporate partners.

The only logical inferences to be drawn from these facts is that on November 1, 1974, the assets of Gene Henshaw and Associates, the 1972 Partnership, were transferred to Henshaw, Kroenecke & Associates, the 1974 Partnership composed of two corporations, and that the 1972 Partnership became dormant.

We are thus faced with the question of whether, under the 1974 Articles, there is a binding covenant not to compete which will support a judgment for Henshaw. The answer is the covenant is not legally binding on either Kroenecke or Henshaw because it was not executed as required by the Articles. This is simply an application of the basic law of contracts that agreements lacking the element of acceptance are unformed and thus unenforceable as binding contracts. See, e.g., *Hutton v. Methodist Home,* 615 S.W.2d 289, 292 (Tex.Civ.App.—Fort Worth 1981, ref'd n.r.e.).

Each of the agreements is divided into separate sections entitled articles. Each contains 17 separate articles covering identical subjects with one exception. The articles in both agreements use identical or very similar wording. The only wording in the 1974 agreement which refers to the 1972 agreement is Article 17 which states:

This agreement does not alter or amend those Articles of Partnership between

L.E. "Gene" Henshaw and Louis Kroenecke dated April 6, 1972 as amended.

Nowhere in the 1974 agreement is there any wording whatsoever which remotely suggests that the corporate partners were attempting to integrate the 1972 agreement into the 1974 agreement. Further, there are no pleadings or any other suggestions by Henshaw that integration of the two agreements was even considered or discussed. In fact, Henshaw predicated his jury submission on the 1972 agreement, not an integration of the 1974 agreement. At most, the above quoted Article 17 of the 1974 agreement suggests that the corporate partners were agreeing that the partnership of Henshaw & Associates would remain a paper shell since it had no assets.

An integration of two or more separate writings is permissible only where it is shown that such was clearly the intent of the parties or when a writing under scrutiny is ambiguous and it is necessary to refer to the other writing to clear up the ambiguity. The 1974 agreement is clear and unambiguous; neither party suggests otherwise. Thus the intent of the parties is clearly expressed in the 1974 agreement itself.

There is no basis on which the majority can validly base its findings of integration of the two contracts. Without integration the 1974 contract, sans a covenant not to compete, will not support the holding of the majority.

I would affirm the judgment of the court of appeals.

KILGARLIN, J., joins in this dissent.