**L.E. "Gene" HENSHAW and Gene Henshaw Associates, Inc., Appellants,**

**v.**

**Louis KROENECKE and Lou Kroenecke & Associates, Inc., Appellees.**

No. 01-81-0728-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 19, 1984.

Rehearing Denied May 23, 1984.

Jon Mercer, Houston, for appellants.

Robert M. Hardy, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

Before BASS and JACK SMITH, JJ.

## OPINION

BASS, Justice.

This is an appeal of a contract case which comes to us on remand from the Supreme Court of Texas.

Gene Henshaw and Lou Kroenecke executed a partnership agreement in 1972, which provided that if Kroenecke voluntarily terminated the partnership and breached the covenant not to compete, he would pay to Henshaw as liquidated damages "12 times the average monthly partnership billing to each client or prior client with whom Kroenecke does business." Then, in 1974, Henshaw and Kroenecke individually incorporated their respective partnership interests and executed a partnership agreement between their corporations that did not alter or amend the 1972 agreement. The new agreement required the execution of a covenant not to compete, which Kroenecke refused to execute. Henshaw, contending that Kroenecke had voluntarily terminated the partnership agreement, set the termination date at July 31, 1976. Kroenecke responded that it was never his intention to terminate the partnership, but he would agree to the terminating date. Following dissolution, Henshaw sued for the liquidated damages as provided in the 1972 partnership agreement.

At trial, by four special issues, the jury found: (1) Kroenecke voluntarily terminated the partnership; (2) the purpose of the liquidated damage clause was not to secure performance by Kroenecke of the non-competition agreement; (3) the purpose of the non-competition agreement was to protect Henshaw and his interest only; and (4) the non-competition agreement did not constitute an unreasonable restraint of trade.

The trial court disregarded the jury's answer to Special Issue No. Four as a question of law improperly submitted to the jury, and finding the covenant not to compete unenforceable, the court entered a take nothing judgment against Henshaw.

This court affirmed, holding that the covenant not to compete was unreasonable and unenforceable. The Supreme Court held that the noncompetition/liquidated damages provision was reasonable and enforceable; that Henshaw was entitled to the protection of the noncompetition agreement; that the 1974 partnership was the successor of the 1972 partnership; that the 1972 covenant not to compete was incorporated into the 1974 partnership; and reversed and remanded the case to this court for consideration of Kroenecke's insufficiency points of error and to correct mathematical errors in the calculation of damages. 656 S.W.2d 416 (Tex.1983).

The only points in Kroenecke's brief that in any way refer to evidence are reply point no. seven and cross-points two and three. Reply point seven, asserting that "appellants failed to offer any evidence" of the amount of liquidated damages, was rejected by the Supreme Court, because it found that Henshaw's exhibits eight and nine (consisting of a list of clients Kroenecke serviced and ledger cards for those clients he continued to service after termination), were neither challenged nor controverted, and that Henshaw, therefore, proved his damages as a matter of law. 656 S.W.2d at 420.

Kroenecke's cross-points no. two and three are as follows:

### CROSS POINT 2

The jury's answer to Special Issue No. 1 is not supported by any evidence and, therefore, entry of judgment based upon Special Issue No. 1 would have constituted error.

### CROSS POINT 3

The jury's answer to Special Issue No. 2 is so against the great weight and preponderance of the evidence as to be

clearly erroneous and, therefore, entry of judgment based upon Special Issue No. 1 would have constituted error.

■ These points are argued together in Kroenecke's brief. It appears that cross-point three contains a typographical error insofar as it refers to "Special Issue No. 2." Because no reference is made in his argument and authorities to "Special Issue No. *2*", and because that issue was a defensive issue to which only Henshaw objected, we will assume and consider that reference to "Special Issue No. *1*" was intended, and that Kroenecke intended to raise alternative legal and factual insufficiency cross-points concerning Special Issue No. One. If there is no typographical mistake, the point of error has been waived. Tex.R.Civ.P. 418(e); *Arrechea v. Arrechea,* 609 S.W.2d 852 (Tex.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

Special Issue No. 1 inquired:

Do you find from a preponderance of the evidence that Louis Kroenecke voluntarily terminated the partnership of Henshaw Kroenecke & Associates by his words and/or conduct?

Answer: We do.

■ In deciding the "no evidence" cross-point we consider only the evidence tending to support the jury's finding, viewing it in the most favorable light in support of the finding, giving effect to all reasonable inferences that may properly be drawn therefrom and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981). The record reflects that Kroenecke left Henshaw two notes demanding that the covenant not to compete be removed, and reiterated this demand in a meeting. He sent Henshaw a letter demanding the elimination of the covenant, conditioning his continued participation in the partnership upon this demand. He was uncooperative, and would neither disclose to Henshaw necessary billing information nor allow assistance in servicing clients. Because there is evidence of probative force in support of the finding, cross-point no. two is overruled, and we continue with a full review of the evidence in considering cross-point three.

■ In deciding the "against the great weight and preponderance" cross-point we consider all of the relevant evidence in the record tending to prove or disprove the fact being challenged. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951); *see also* O'Conner, *Evidence Points on Appeal,* 37 Tex.B.J. 839 (1974). Kroenecke contends that the events leading up to the alleged termination grew out of negotiations on amending the existing partnership agreements. In support of his cross-point he cites Henshaw's admission that all matters were negotiable except for the execution of the non-competition agreement; that Henshaw originally agreed to sign an agreement but later refused, which resulted in Kroenecke's insistence that Henshaw execute one; and that Kroenecke alternatively suggested a lump sum buyout agreement applicable to both parties that Henshaw refused to consider. Kroenecke argues that his insistence that Henshaw do only what he had promised to do can not be construed as a violation of the partnership agreement, and Henshaw's refusal was the only reason he accepted the termination.

The record further reflects, however, that Kroenecke was demanding renegotiation of compensation or partnership equity interest, and moving the office space, in addition to his demand that Henshaw also execute a covenant and replace the liquidated damage provision with a lump sum provision. Henshaw testified that "Mr. Kroenecke stated orally you will make those changes or the partnership will be terminated."

The jury observed the demeanor and determined the credibility of the witnesses and under the evidence presented found that Kroenecke voluntarily terminated the partnership by his words and/or conduct. We hold the evidence to be sufficient to support the jury's finding. Appellee's cross-points two and three are overruled.

We have reviewed the mathematical analysis of Henshaw's exhibits no. eight

and nine, and the computation of the average monthly billings for the clients listed reveals purely mathematical errors in the calculation of the liquidated damages asserted by Henshaw. The addition of the various amounts as computed pursuant to the liquidated damage provision for the clients listed, yields a corrected sum of $67,089.60. The judgment of the trial court is reversed and judgment in the amount of $67,089.60 is rendered for appellants.