**DRESSER INDUSTRIES, INC.,**
Plaintiff-Appellant,

v.

**Duane J. SANDVICK, Gary T. Petty, Steve Goodall, Petro-Chem, Inc., and Joe Don Eide, Defendants-Appellees.**

No. 82–1826.

United States Court of Appeals,
Tenth Circuit.

April 20, 1984.

Marcus L. Squarrell, Denver, Colo. (Marcus W. Sisk, Jr. and Paul F. Hultin, Denver, Colo., with him on the briefs) of Sisk, Foley, Hultin & Driver, Denver, Colo., for plaintiff-appellant.

Jane Michaels, Denver, Colo. (James J. Dufficy, Denver, Colo., with her on the brief) of Holland & Hart, Denver, Colo., for defendants-appellees.

Before BARRETT and LOGAN, Circuit Judges, and BOHANON, District Judge.[*]

LOGAN, Circuit Judge.

In this diversity case plaintiff, Dresser Industries, Inc., seeks to enforce covenants not to compete against former employees Duane J. Sandvick, Gary T. Petty, and Joe Don Eide and against the company that hired them, Petro-Chem, Inc. (Steve Goodall, the Petro-Chem employee who hired Sandvick, Petty, and Eide, is also named as a defendant.) Finding that application of the proper state law would invalidate the covenants, the court denied Dresser's preliminary injunction requests and certified the instant appeal under 28 U.S.C. § 1292(b). We accepted the appeal[1] and here review the district court's choice of law determinations.

Dresser is a Delaware corporation headquartered in Texas. It develops, manufactures, and markets materials, equipment, and services for drilling and operating oil and gas wells. Dresser sells its products and services throughout the United States.

Dresser's Magcobar Division markets drilling fluids known as "drilling mud," drilling fluid systems, and related materials and services. A drilling fluid system injects drilling fluids into the bore of a well. The drilling fluids circulate through the well bore to remove the cuttings produced by the drill bit, to protect the well bore, and to protect the drill bits and other equipment in the well bore. Like most companies that sell drilling mud, Dresser provides a service to design and operate the drilling fluid systems. This service involves checks at the well site by a "mud engineer," an employee with limited technical training who, by using standard tests and calculations, determines the additives necessary to maintain the consistency of the drilling mud formulated for the well.

Each defendant was hired as a mud engineer in 1979 and each signed a standard form trade secret agreement and covenant not to compete, which provided, in pertinent part,

"That for a period of one (1) year after termination, I will not directly or indirectly compete with Magcobar in the territory in which I was employed at any time during the previous two (2) years of my employment with Magcobar."

Dresser trained Sandvick, Petty, and Eide in Texas and assigned each of them to work in the Williston Basin in the North Dakota-Montana area. Petty and Sandvick spent most of their time in North Dakota and Eide spent most of his in Montana. Early in 1981, all three employees left Dresser and accepted employment as mud engineers with Petro-Chem's American Mud Division. During their employment with Petro-Chem Petty and Sandvick continued to reside in North Dakota, and Eide apparently remained a resident of Montana.

---

[*] Honorable Luther L. Bohanon, Senior United States District Judge for the District of Oklahoma, sitting by designation.

1. Dresser's request for preliminary injunctive relief is moot because the covenants at issue in this case only restricted competition with Dresser for a period of one year after termination. Sandvick, Petty, and Eide all terminated their employment with Dresser well over a year ago. The controversy is not moot, however, because in its amended complaint Dresser claims monetary damages for violation of the covenants.

At the hearings on Dresser's motions for injunctive relief the trial court considered the substance of the employment relationship between Dresser and the defendants in order to determine what law to apply. The trial court made findings on the basis of the *Restatement (Second) of Conflicts of Laws* §§ 6 and 188 (1971). It made the following findings for purposes of its choice of law analysis:

(1) Place of contracting: Sandvick in North Dakota; Petty in Colorado; Eide in Wyoming.

(2) Place of negotiation of contract: Sandvick in North Dakota; Petty, Colorado; Eide, Wyoming and Colorado.

(3) Place of performance: Possibly a ten-state area; but Sandvick and Petty performed most of their work in North Dakota; Eide in Montana.

(4) The location of the subject matter of the contract: Difficult to determine, but if subject matter is identified as an interest in the employment relationship, that interest existed in Texas and the states where the employees actually lived and performed.

(5) Domicile, residence, place of incorporation, place of business of parties: Sandvick was domiciled in North Dakota; Petty was domiciled in Colorado but became a resident of North Dakota upon his assignment to work there; Eide was a resident of Wyoming who became a resident of Montana upon his assignment there; Dresser is a Delaware corporation with its principal place of business in Texas.

After identifying these contacts, the trial court considered the interest of uniformity and weighed the justified expectations of the parties. The court noted that Dresser probably expected the defendants to honor the contracts. If Texas law applies, the covenants not to compete may be enforceable. If Texas law does not apply, the covenants are unenforceable under the laws of any of the other potentially interested states. The court noted that the statutes of Colorado, North Dakota, and Montana express a strong public policy against covenants not to compete. The district court concluded that because of the interests of those states in contracts entered into by their citizens North Dakota law applies to Sandvick's employment agreement, Colorado law applies to Petty's employment agreement, and either Colorado or Wyoming law governs the validity of Eide's covenant.

I

■ A federal court in a diversity case must apply the choice of law principles of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Thus, we must follow Colorado law, which resolves conflicts under the principles set forth in *Restatement (Second) of Conflict of Laws* §§ 6 and 188 (1971) (the *Restatement*). *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369 (1979).

In determining the applicable law in contract cases, *Restatement* § 188 directs that when the parties to a contract have failed to make an effective choice of law, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." The relevant factors under § 188 in determining what states have an interest in the transaction are:

"(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

The determination of the state with the most significant relationship to an issue in a contract action must take into account the principles set forth in *Restatement (Second) of Conflict of Laws* § 6. These principles are:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied."

Dresser asserts that all ten states in Dresser's Rocky Mountain area plus the nine additional states where Magcobar competes with American Mud have an interest in the enforceability of the standard agreement. We disagree. Dresser's own standard agreement expressly states that the covenants apply only to areas in which the employees have performed services for Dresser. Our review of the record convinces us that the trial court correctly identified the interested jurisdictions.

## II

■ For purposes of this case, the most important *Restatement* § 6 factors are the relevant policies of the forum and the relevant policies of other interested states regarding the enforceability of covenants not to compete. The interest of a state in having its law applied depends on the purpose advanced by that law and the relation of the state to the transaction and the parties. *Restatement* § 188 comment c. For this reason, a state in which a party is domiciled has an interest in rules it promulgates to protect its residents against the unfair use of superior bargaining power and to protect their freedom to use their employable skills to support themselves and their families. While performing services for Dresser, Sandvick and Petty were domiciliaries of North Dakota, and Eide was a domiciliary of Montana. Both of these states invalidate covenants not to compete. *See* N.D.Cent.Code § 9–08–06; *Forney Industries, Inc. v. Andre,* 246 F.Supp. 333, 334 (D.N.D.1965); Mont.Code Ann. § 28–2–703; *Miller Co. v. Madel,* 176 Mont. 49, 575 P.2d 1321, 1322–23 (1978). Texas also has an interest in protecting the legal rights of its domiciliaries. Dresser's principal place of business is Texas. Texas will, under certain circumstances, enforce covenants not to compete, *Henshaw v. Kroenecke,* 656 S.W.2d 416, 418 (Tex.1983).

The states where the parties entered into the employment relationships—Colorado, Wyoming, and North Dakota—have a substantial interest in invalidating covenants not to compete signed within their borders. *See* Colo.Rev.Stat. § 8–2–113(2); *Colorado Accounting Machines, Inc. v. Mergenthaler,* 44 Colo.App. 155, 609 P.2d 1125 (1980); *Ridley v. Krout,* 63 Wyo. 252, 180 P.2d 124 (1947). And the states where performance occurred under the contracts, North Dakota and Montana, also have a substantial interest in invalidating covenants not to compete.

## III

Dresser argues that the district court should apply Texas law and therefore enforce the covenants to promote certainty, predictability, and uniformity of result. The argument is based on Dresser's characterization of Sandvick, Petty, and Eide's employment as multistate in character. The *Restatement* § 6 comment i, states that the factors of certainty, predictability, and uniformity "are important values in all areas of the law. To the extent that they are attained ..., forum shopping will be discouraged. These values can, however, be purchased at too great a price." In this case we believe the price is too high. Texas is Dresser's principal place of business, but Sandvick, Petty, and Eide each spent only a short training period there and per-

formed no services there as mud engineers. Further, since the covenants only prohibit competition in areas in which former Dresser employees were employed during the two years before termination, the covenants would not restrict them from working as mud engineers for a competitor in Texas.

■ Although the parties may have expected the covenants to be enforced, the policy of protecting justified expectations does not supersede all other considerations. *See Restatement* § 188(2)(d); *Wood Bros. Homes, Inc. v. Walker Adj. Bureau*, 198 Colo. 444, 601 P.2d 1369, 1373 (1979). In *Wood Bros.*, the plaintiff sought recovery in quantum meruit for work performed on a construction project in New Mexico. Plaintiff's assignor had partially performed before New Mexico authorities halted work because the assignor lacked a contractor's license. Colorado law permitted recovery, but New Mexico law prohibited recovery when the work was performed without a contractor's license. The Colorado Supreme Court recognized Colorado's interest in protecting the contractual expectations of the parties. However, the court held that this interest was outweighed by New Mexico's interest in applying its invalidating rule. *Wood Bros.* indicates that in the case at bar Texas' interest in protecting the parties' expectations are outweighed by the interests of the states with the most significant contacts to the parties and to the transactions.

Finally, we note that Texas courts are not enthusiastic about covenants not to compete. In *Weatherford Oil Tool Co. v. A.G. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 957 (1960), the Supreme Court of Texas wrote,

"An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes on the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer."

*See also Henshaw v. Kroenecke*, 656 S.W.2d 416 (Tex.1983). Although these cases suggest that Texas might uphold the covenants not to compete at issue in this case, *Weatherford* and *Henshaw* also indicate that Texas does not express as strong a policy in favor of enforcing covenants not to compete as the other interested states do in invalidating them.

## IV

■ Finally, we must examine the strength of the policy of the forum state, Colorado. The substantive law of another jurisdiction should not apply if application of that law would violate a fundamental policy of the forum. *Fort Smith Paper Co., Inc. v. Sadler Paper Co.*, 482 F.Supp. 355, 357 (E.D.Okla.1979). The district court found that Colorado has a strong policy against covenants not to compete. Colo.Rev.Stat. § 8–2–113(2) provides:

"(2) Any covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void, but this subsection (2) shall not apply to:

(a) Any contract for the purchase and sale of a business or the assets of a business;

(b) Any contract for the protection of trade secrets;

(c) Any contractual provision providing for recovery of the expense of educating and training an employee who has served an employer for a period of less than two years;

(d) Executive and management personnel and officers and employees who constitute professional staff to executive and management personnel."

In spite of this statute, Dresser argues that Colorado has no policy against covenants not to compete and that the prevailing Colorado policy is to effectuate the intentions of the parties. However, § 8–2–113(2)

clearly declares that covenants not to compete are void subject to certain limited exceptions. One exception permits contracts for the protection of trade secrets. Dresser's standard agreement contains a covenant forbidding the disclosure of trade secrets. However, the section of the standard agreement at issue in this case is a naked covenant not to compete. A naked covenant not to compete is void under the statute and cannot be validated by the insertion of a companion clause dealing with trade secrets. *Colorado Accounting Machines, Inc. v. Mergenthaler*, 44 Colo.App. 155, 609 P.2d 1125, 1126 (1980).

■ Dresser also refers to § 8–2–113(2)(c), which permits contractual provisions for the recovery of expenses for training an employee who serves the employer for less than two years. It is true that Dresser incurred expenses in training Petty, Sandvick, and Eide, who left after about 1½ years of employment, but § 8–2–113(2)(c) is inapplicable because their employment agreements contained no provision requiring reimbursement of training expenses.

Two recent cases from other jurisdictions underscore the tendency of the courts to apply the policy of the forum state when parties are litigating covenants not to compete. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Stidham*, 658 F.2d 1098 (5th Cir.1981), involved an action against former employees to enjoin them from violating non-competition and non-disclosure provisions in their employment contracts. Defendant-employees received six months of training at Merrill Lynch's New York headquarters and were then assigned to the Athens, Georgia, office. Defendants accepted jobs with a competitor in violation of their non-competition agreement while working in the Georgia office. Although the contracts directed that New York law should govern, the Fifth Circuit refused to apply New York law to uphold the covenants because Georgia had a public policy against such restrictive covenants. *Id.* at 1100 n. 5. Similarly, in *Muma v. Financial Guardian, Inc.*, 551 F.Supp. 119 (E.D. Mich.1982), the district court refused to

apply Missouri law to an agreement that was executed in Missouri by Missouri residents. The court held that a Michigan court would not apply Missouri law when such law contravened the strong policy of the forum against covenants not to compete. *Id.* at 121.

■ Because we agree with the trial court that the forum state and the states with the most significant contacts all invalidate the type of covenant not to compete at issue here, we hold that Dresser is not entitled to damages for any alleged breach of that covenant.

AFFIRMED.