**CENTEL CELLULAR CO. OF TEXAS, Appellant,**

**v.**

**Debbie LIGHT, Appellee.**

**No. 12–91–00009–CV.**

Court of Appeals of Texas, Tyler.

Oct. 30, 1992.

Rehearing Denied Nov. 30, 1992.

James T. Womack, Longview, for appellant.

Bruce A. Smith, Gregory T. Grajczyk, Longview, for appellee.

COLLEY, Justice.

The dispute in this case arises from a covenant not to compete contained in a written contract of employment between Appellee and United TeleSpectrum. United TeleSpectrum was formerly engaged in the business of selling only radio pagers but before the contract of employment was executed on October 8, 1987, TeleSpectrum received a license from the Federal Communications Commission authorizing it to sell and install cellular telephone systems in northeast Texas.

Appellee first went to work for TeleSpectrum in August of 1985 as a salesperson. She became an outstanding salesperson of pagers and received several awards for her outstanding performances. Thereafter, United TeleSpectrum sold its entire business to Appellant, Centel Cellular Company of Texas, and Appellee continued to work for Appellant as a salesperson. In the spring of 1988, Appellee was selling both pagers and cellular phones systems for Appellant, but her sales dropped markedly for several reasons. Appellee quit her job with the Appellant on May 30, 1988.

On November 30, 1988, Appellee sued Appellant alleging a cause of action under TEXAS BUSINESS & COMMERCE CODE ANN. § 15.21(a)(1) (Vernon 1987),[1] specifically claiming that the "covenant not to compete constituted an illegal restraint on trade" under the then existing decisions in *Martin v. Credit Protection Assoc., Inc.*, 793 S.W.2d 667 (Tex.1990), and *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), which adopted the so-called "common calling" doctrine declared in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (Tex.1987).

On August 8, 1990, Appellee filed her third amended petition (live pleading at trial), alleging two causes of action, one under TEX.BUS. & COMM.CODE ANN., § 15.21(a)(1) (Vernon 1987) (hereinafter "Section 15.21") (Count I), and one under the common law doctrine of tortious interference with prospective contractual relationships (Count II).[2]

In pre-trial proceedings, the Appellee moved for a partial summary judgment that the covenant not to compete was unenforceable. The trial court granted the motion, and on April 23, 1990, signed an inter-

---

**1.** Section 15.21(a)(1) provides in part that "[e]very contract ... in restraint of trade or commerce is unlawful."

**2.** *See Sterner v. Marathon Oil Company*, 767 S.W.2d 686, 689 (Tex.1989); *see also Martin v.*

*Phillips Petr. Co.*, 455 S.W.2d 429, 435 (Tex.Civ. App.–Houston [14th Dist.] 1970, no writ), and *Lone Star Steel Co. v. Wahl*, 636 S.W.2d 217, 222 (Tex.App.–Texarkana 1982, no writ).

locutory order finding that Appellee "was engaged in a common calling occupation" and that the covenant "constitutes a restraint on trade and... [violates] section 15.05(a) of the Tex.Bus. & Comm.Code."

The trial court, on Appellant's motion to reconsider Appellee's motion for partial summary judgment, vacated the April 23, 1990 order on July 13, 1990, and in its stead, concluded simply that the covenant based on the summary judgment evidence presented was "unreasonable and constitutes a restraint on trade and is therefore unenforceable." On July 18, 1990, Appellee filed her motion to "reurge partial summary judgment." In response to that motion, the trial court on August 20, 1990, finally amended his order of July 13, 1990 by finding as a matter of law, that "the contract 'was not ancillary to an otherwise valid transaction or relationship'," and "is unreasonable and constitutes a restraint on trade and is therefore unenforceable."

On August 29, 1990, the cause was tried to a jury, and based on their verdict the court signed a judgment in favor of Appellee for actual damages.

The court submitted six jury questions. Question number one inquired whether Appellant "tortiously interfered with [Appellee] entering into a prospective contract which proximately caused damages to [Appellee]?" In that question the court instructed the jury that the elements of tortious interference with a prospective contract were as follows:

1. A reasonable probability existed that Appellee would have entered into a contractual relationship;
2. Appellant by an intentional and malicious act prevented the relationship from occurring, with the purpose of harming Appellee;
3. Appellant lacked privilege or justification to do the act, and;
4. Appellee sustained actual harm as a result of the Appellant's interference.

The jury answered question one, "Yes."

Question two asked whether "[Appellee] suffered injury to her business or property by reason of [Appellant's] conduct?" In this question the court gave an accompanying instruction to the jury that the court had ruled that the covenant not to compete was unenforceable. The jury answered question two, "Yes."

In question number three, the jury was asked whether "the covenant not to compete had an adverse effect on competition in the cellular phone market?" The jury said, "No."

Question number four went unanswered pursuant to the court's preceding instructions.

In response to question number five, the jury found the amount of reasonable attorney's fees that Appellee incurred at trial and would incur on appeal.

This verdict was received; whereupon, Appellant filed its motion for judgment non obstante veredicto that the Appellee take nothing based on, inter alia, the grounds that, (1) the court should disregard the answer to question number one because the evidence conclusively establishes that Appellant "was justified and privileged" to take the action it did, after Appellee "quit" working for Appellant, and (2) that there was no evidence to support the affirmative finding to question number one.

Appellant alleges ten points of error. By its first point, Appellant claims that the court erred in granting the "partial summary judgment" for Appellee. By its second point of error, Appellant argues that the trial court "erred in denying" its motion for summary judgment on the whole case.

We hold the opinion that the court's action overruling Appellant's summary judgment motion under the facts and circumstances reflected by this record does not constitute reversible error. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362 (Tex.1966), and *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958). Therefore, we now turn to address Appellant's first point of error.

■ Under established law, the question of whether a covenant not to compete is reasonable and therefore enforceable, is a question of law for the court. *DeSantis v.*

*Wackenhut Corp.,* 793 S.W.2d 670, 682 (Tex.1990); *Henshaw v. Kroenecke,* 656 S.W.2d 416, 418 (Tex.1983). According to *DeSantis,* a covenant not to compete must meet the standards of reasonableness, (1) "[the covenant] must be ancillary to an otherwise valid transaction or relationship"; (2) "the restraint created by the [covenant] must not be greater than necessary to protect the promisee's legitimate interests"; and, (3) "the promisee's need for the protection afforded by the [covenant] ... must not be outweighed by either the hardship to the promisor or any injury likely to the public." *DeSantis,* 793 S.W.2d at 681–82.

The *DeSantis* court explained the first of the reasonableness criteria by saying that the covenant is unreasonable "unless it is part of and subsidiary to an otherwise valid transaction or relationship which gives rise to an interest [of the promisee] worthy of protection." *Id.* at 682. "Such transactions or relationships include ... employment relationships." *Id.* The court gave examples of such worthy interests, *viz.,* "business goodwill, ... and other confidential or proprietary information." *Id.* The court also recognized that the covenant must be "limited appropriately as to time, territory, and type of activity," but noted that a court sitting in equity has the power to reform or modify a covenant to make it reasonable in respect to time, territory, and type (scope) of activity. *Id.* The court then explained that in consideration of the third criteria, the covenant may not impose undue "hardship to the promisor.... Before [a covenant] will be enforced, its benefits [for promisee] must be balanced against its burdens, both to the promisor and the public." *Id.* The court continued, saying, that while the covenant can permissibly accomplish a "salutary purpose" that encourages "an employer to share confidential, proprietary information with an employee in furtherance of their common purpose," the employer may not by reason of a superior bargaining power "take un-

fair advantage" of his employee, thereby impairing the "employee's personal freedom and economic mobility." *Id.* In applying the "reasonableness standards" prescribed by *DeSantis* to this case, we are free to eliminate the "common calling" doctrine of *Hill v. Mobile Auto Trim Inc.* and *Bergman v. Norris of Houston,* 734 S.W.2d 673 (Tex.1987), by reason of new legislation (TEX.BUS. & COMM.CODE ANN. §§ 15.50–15.51 (Vernon Supp.1992)). *See DeSantis,* 793 S.W.2d at 683. To decide the law question here presented in the context of the summary judgment rule (TEX.R.CIV.P. 166a(a)), it would appear that we must either uphold or overturn the trial court's decision on the reasonableness of the covenant without the luxury of relying on whether any material questions of fact were raised and must be decided by the trier of fact at a trial on the merits. To do so, however, we must examine the contract and the face of the covenant as well as the pertinent underlying facts and circumstances surrounding the execution of the contract of employment, and the covenant not to compete contained therein as revealed by the summary judgment evidence.

The summary judgment evidence consists of Appellee's affidavit and the so-called employment contract, both attached to Appellee's motion for a partial summary judgment, as well as the exhibits [3] attached to Appellant's response to Appellee's motion and the oral deposition of LaQuita Allen and Appellee Debbie Light.

The language of the preamble to the contract contains purported agreements of the contracting parties that, United TeleSpectrum provides and sells complex "mobile paging cellular services" with heavy investment and training of its employees "to function as a salesperson" of such "mobile radio communication services," that Appellee will have close contact with Appellant's customers with whom she will deal, and that Appellee will, while working for Appellant, "acquire confidential cus-

---

**3.** Consisting of a letter dated October 12, 1988, from Appellee's attorney to Centel, LaQuita Allen, and Dan Croft, Regional Manager and Regional Vice President, respectively, and a letter

dated October 21, 1988, from Vice President Croft to Appellee's attorney in response to counsel's letter.

tomer-related information" which "if it were to come into the possession of [Appellant's] competition" could cause damage to Appellant; and that specifically, Appellant "will incur damage if [Appellee] leaves [Appellant's] employ[ment] and goes to work for a competitor of [Appellant] in the service areas as a salesperson, or in any capacity that would permit [Appellee] to take advantage of confidential information and customer contact acquired in the course of her employment with [Appellant]."

Paragraphs numbers one through three of the contract provide for the employment of Appellee in the "Tyler–Longview–Kilgore–Marshall service areas" or other areas as shall be agreed upon by the parties, provide for "[amounts of] salary and commission for sales" made by Appellee at "then existing sales and compensation plans," together with "a package of employee benefits" as set forth in Appellee's "policy, manual and directives."

Under paragraph four, Appellant agrees to provide "initial and on-going specialized training necessary to sell the mobile radio communication services [Appellant's] offers."

Appellee's employment under the contract "is terminable at the will of either [Appellee] or [Appellant]." However, under paragraph five of the agreement, only Appellee is required to provide fourteen days previous notice of her decision "to terminate" employment. And under paragraph six, Appellee, upon giving such notice, is required to furnish "an inventory" of the property owned by Appellant "in her possession" and return the same to Appellant. Paragraph seven of the covenant reads as follows:

Salesperson agrees, upon termination of employment with United TeleSpectrum, and for a period of One year thereafter, he/she will not directly or indirectly compete with United TeleSpectrum in the Longview–Tyler–Marshall service area. The salesperson agrees that this paragraph prohibits him/her from accepting employment in the Longview–Tyler–Marshall service area from any mobile communication service provider, or any agent or reseller of a mobile communication service provider, as a salesperson, or in any other capacity that would give the salesperson customer contact or that would permit the use of the customer related information he/she acquired in the course of his/her employment with United TeleSpectrum.

Paragraph number eight of the contract reads:

Salesperson agrees that the prohibition stated in paragraph 7 above also prohibits him/her from acting as an independent agent of any mobile radio communications provider, agent or reseller in the Longview–Tyler–Marshall geographic service area.

Paragraph number nine reads:

The referenced geographic service area also includes any future expansions of its service area which United TeleSpectrum may implement in the vicinity immediately surrounding the present service area, during the time the salesperson is employed by United TeleSpectrum.

Under paragraph ten, the final paragraph of the contract, the Appellee "agrees" that should she fail to keep "the promise" made in paragraphs six through eight of the contract, Appellant will sustain damages so Appellant may enforce the promises by writ of injunction or be entitled to recover damages or seek any remedy "available by law or equity."

■ We have carefully studied the summary judgment evidence as well as the analyses set forth in *DeSantis*. We conclude that the covenant not to compete was ancillary to the October 8, 1987 written contract of employment, in that such document supplemented or amended the existing at will oral employment agreement that Appellee had with TeleSpectrum, by providing for commissions on sales of a new product, Cellular Telephone Systems, soon to become available for installation in the east Texas service area described in the contract. Moreover, the covenant not to compete was well supported by "independent valuable consideration" as required by the Tex.Bus. & Comm.Code Ann. § 15.50(1) (Vernon Supp.1992), and the decision in

*Martin v. Credit Protection Assn., Inc.,* 793 S.W.2d 667, 670 (Tex.1990). The underlying facts and circumstances also show conclusively, that Appellee, beginning in September of 1987, received on-going special training on the features of the cellular phone systems, their installation, and considerable exposure to helpful sales techniques specifically related to sale of cellular systems.

At the time Appellee signed the employment contract, she had an excellent sales record with a large customer base acquired from her sales of pagers. By her own deposition testimony, Appellee stated that when she began to sell cellular phones her sales territory was expanded to include Gregg, Panola, Harrison, Upshur, and Rusk Counties. She testified that she enjoyed great success in selling pagers and that during the months of October and November of 1987, she had made more sales of cellular phones than any other salesperson and in fact won a prize for her performance.

LaQuita Allen, by her undisputed deposition testimony, stated that the training of Appellant's salespersons began in September, 1987, and that Appellee received a notebook for use in "classroom style" weekly meetings at which discussion of cellular telephone systems, its features, benefits, and use was had with all salespersons. Allen also stated that issues involving customer objections or questions about the cellular telephone system were addressed in those weekly meetings. She said those questions were addressed expressly for the purpose of helping the salespersons acquire pertinent information to answer those questions favorably and to sell the telephone systems. It is undisputed, as Allen testified, that a video tape was also used at the weekly meetings to acquaint the salespersons with the cellular systems, and that installers of the systems attended these weekly meetings to answer the questions of the salespeople about the system they were selling. This evidence demonstrates that Appellee sold pagers and cellular phone systems for United TeleSpectrum and Appellant during a period of some two years and nine months, and

that during that period of time she acquired a large customer base. Surely Appellant thereby acquired a proprietary and legitimate interest worthy of protection, *viz.,* customer information. *See DeSantis,* 793 S.W.2d at 682; *Martin,* 793 S.W.2d at 670; and Section 15.50.

The restraints imposed by the covenant were one year, and three Texas counties and to only business activities of the Appellee "that would permit [her] use of ... customer-related information [she] acquired in the course of [her] employment with [Appellant]." Therefore, based on the summary judgment evidence alone, we conclude that the covenant meets the reasonableness standards of both section 15.50(2) and *DeSantis,* 793 S.W.2d at 682, as well as *Henshaw v. Kroenecke,* 656 S.W.2d at 418. Therefore, the trial court erred in granting Appellee's partial summary judgment motion. We sustain Appellant's first point of error.

Appellant, by its point of error number five, argues that the court erred in overruling its motion for judgment non obstante veredicto because there was no evidence to support the jury's affirmative finding to jury question number one that Appellant was not privileged or justified to assert its rights under the covenant by refusing to release Appellee from its provisions.

Since we have already decided that the covenant was a reasonable restraint of trade under the statutory and case law standards, we also conclude that the Appellant had a right to assert the contractual provisions under the covenant and refuse to release Appellee from the same. Therefore, we sustain the point of error number five.

Our final task now is to determine what decisional action should be taken in this appeal.

■ We are persuaded that the language of section 15.50, that *"[n]otwithstanding section 15.05 of this Code,* a covenant not to compete is enforceable to the extent that it: (1) is ancillary to an otherwise enforceable agreement ...; and (2) contains reasonable limitations ...,"* when read togeth-

er with "section 15.05" requires us to conclude that no cause of action arises under TEX.BUS. & COMM.CODE ANN. § 15.05(a) (Vernon 1987), for the reasonable restraints imposed by such covenant. (Emphasis added.) It therefore follows that Appellee's alleged cause of action under TEX.BUS. & COMM.CODE ANN. § 15.21(a)(1) (Vernon 1987), was not actionable, hence, as a matter of law, no damages could be attributed to that cause of action.

In summary, because the covenant was reasonable, therefore enforceable, Appellee had no cause of action under section 15.-21(a)(1) against Appellant, and because the court erred in overruling Appellant's motion for judgment non obstante veredicto in respect to the tortious interference claim, we reverse the judgment, and here render judgment that Plaintiff/Appellee Debbie Light take nothing against Defendant/Appellant Centel Cellular Company of Texas, and it is so ordered. Additionally, we adjudge the cost in this Court against the Appellee, Debbie Light.